95 S.W.3d 462 (2002)
In the Interest of C.T.E. and D.R.E.
No. 01-01-00854-CV.
Court of Appeals of Texas, Houston (1st Dist.).
November 21, 2002.
Rehearing Overruled January 9, 2003.
*464 Anna E. Stool, Houston, for Appellant.
Sandra D. Hachem, Assistant County Attorney, Houston, for Appellee.
Panel consists of Justices HEDGES, KEYES and DUGGAN.[1]

OPINION
ADELE HEDGES, Justice.
The Texas Department of Protective and Regulatory Services (TDPRS) filed suit to terminate the parent-child relationship between C.T.E. and D.R.E., minor children, and appellant, Terrell Green. After finding that appellant endangered the physical or emotional well-being of his children and that termination was in the children's best interests, the trial court terminated appellant's parental rights. We reverse and remand.

The Facts
The evidence showed that appellant was convicted of possession of cocaine on June 8, 1990, before either of his children was born. He was paroled in 1991. In 1993, after the first child was born, appellant was convicted of burglary of a coin-operated machine and served 100 days in county jail. His parole was not revoked. In 1994, after the second child was born, appellant's parole was revoked after he pled guilty to a misdemeanor assault committed against the children's mother. Appellant's undisputed explanation for the assault was that it resulted from an argument he had with the children's mother who he was trying to prevent from going into a drug place. D.R.E. has been in TDPRS's care since December of 1994 and C.T.E. has been in TDPRS's care since February of 1995 with the exception of five months they spent with their aunt in 1996. Appellant was released from prison in April of 1999. In October of 1999 his parole was revoked again after he pled guilty to a Class B misdemeanor, theft by receiving. Although he was incarcerated during the June 4, 2001 trial, appellant had a parole review in October 2001 and would be mandatorily released without parole in April 2002.

Procedural History
On March 22, 1996, the trial court appointed Debra Evans, the children's paternal aunt, as sole managing conservator of *465 appellant's two children. The trial court found that appointing the parents as managing conservator would not be in the children's best interest.
In January of 1998, TDPRS filed a motion to modify the trial court's order of March 22, 1996. TDPRS requested the termination of the parental rights of the children's mother and father. TDPRS also requested that it be appointed as the children's sole managing conservator. On June 10, 1998, the trial court terminated the parental rights of the children's mother, but it did not terminate the father's parental rights. The trial court also removed Debra Evans and appointed TDPRS as managing conservator.
On June 29, 2000, TDPRS filed a second motion to modify, requesting the trial court terminate appellant's parental rights. After a trial to the bench, the trial court terminated appellant's parental rights.
In three points of error, appellant argues the following: (1) the trial court improperly admitted evidence of appellant's conduct that occurred prior to June 10, 1998; (2) the evidence was legally and factually insufficient to support the finding that appellant engaged in conduct which endangered the physical or emotional well-being of his children; (3) the evidence was legally and factually insufficient to find that the termination of appellant's parental rights was in the best interest of the children.

Legal and Factual Sufficiency
In his third point of error, appellant contends that the evidence is legally and factually insufficient to show that termination of his parental rights was in the best interest of his children. When presented with legal and factual sufficiency challenges, the reviewing court first reviews the legal sufficiency of the evidence. Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex.1981) (per curiam). We follow the usual standard in reviewing the legal sufficiency of the evidence. Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998) (op. on reh'g). In re C.H., 45 Tex. Sup.Ct. J. 1000, 89 S.W.3d 17 (2002), sets forth the factual sufficiency standard of review for termination of the parent-child relationship cases. We determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the State's allegations. Id. at 1005, 89 S.W.3d at 25.
Legal Sufficiency
The applicable law in this case provides that the trial court can terminate parental rights after a denial of a prior petition to terminate if:
(1) the petition under this section is filed after the date the order denying termination was rendered,
(2) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered,
(3) the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered, and

(4) termination is in the best interest of the child.
TEX. FAM.CODE ANN. 161.004(a)(1)-(4) (emphasis added). In his third point of error, appellant takes issue with the trial court's ruling regarding the fourth element.
The law recognizes a strong presumption that the best interest of a child is served by preserving the parent-child relationship. Wiley v. Spratlan, 543 S.W.2d *466 349, 352 (Tex.1976). TDPRS has the burden to prove by clear and convincing evidence that termination is in the children's best interest. In the Interest of G.M., 596 S.W.2d 846, 847 (Tex.1980). The Texas Supreme Court has provided a non-exclusive list of factors that may be considered in determining whether the termination of a parent's rights is in a child's best interest. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976). These factors include (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. Id.
The Holley factors are not exhaustive. C.H., 45 Tex. Sup.Ct. J. at 1006, 89 S.W.3d at 27. Moreover, the State need not prove all of the factors as a condition precedent to parental termination, "particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." Id. For legal sufficiency purposes, we will consider only those factors that support the finding that termination was in the children's best interest.
1. Acts and Omissions of the Parent
TDPRS argues that the eighth Holley factoracts or omissions of the parent which may indicate that the existing parent-child relationship is not properis the most compelling factor in this case. TDPRS argues that the fact that appellant has engaged in a continuous course of criminal activity shows that the existing parent-child relationship is not proper. As a result, appellant has been unable to raise his children for the majority of their lives due to his confinement.
Although appellant's criminal history is a factor in determining the best interest of the children, it is not dispositive. Termination of parental rights should not become an additional punishment for imprisonment for any crime. In re D.T., 34 S.W.3d 625, 635 (Tex.App.-Fort Worth 2000, pet. denied). Thus, in determining the weight of this factor, we consider the expected length of appellant's imprisonment and whether it can be inferred from appellant's criminal conduct that he has endangered the safety of the children. See id; see also In re C.H. at 1007 (holding that proof of acts or omissions under section 161.001(1) of the Texas Family Code may also be probative in determining the best interest of the child). In the present case, appellant expected to be mandatorily released without parole 10 months after the trial, and appellant's criminal conduct is not the type from which it can be inferred that he has endangered the safety of his children. Accordingly, it is necessary to consider other Holley factors relevant to this case.
2. Programs Available to Assist Appellant That Will Promote the Best Interest of His Children
The fifth Holley factorprograms available to assist appellant to promote the best interest of the childalso supports the finding that termination is in the best interest of the children. TDPRS argues that there are no effective programs that will incentivize appellant to stay out of jail. TDPRS argues that after appellant was paroled in 1999 and signed a family service plan, he engaged in criminal behavior *467 thereby risking the opportunity for reunification with his children. We agree that ultimately, it is solely up to appellant to stay out of jail.
3. The Children's Emotional Needs Now and in the Future
In its third and final argument, TDPRS argues that appellant has never taken care of the children's special needs. Appellant's children have severe behavioral problems that developed after they were placed in TDPRS's care. The children receive weekly therapy and medication to modify their behaviors. Both children are being treated for attention deficit disorder. One child is on an anti-depressant and a mood stabilizer. Because appellant has been unable to provide for the children's needs due to his imprisonment, it is uncertain whether he will be able to satisfy these needs in the future.
Viewing the evidence in the light most favorable to the decree, there is legally sufficient evidence that the best interests of C.T.E. and D.R.E. would be served by termination of appellant's parental rights.
Factual Sufficiency
We review the factual sufficiency of termination findings by determining whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the State's allegations. In re C.H., 45 Tex. Sup.Ct. J. at 1005, 89 S.W.3d at 25. In determining whether the fact-finder has met this standard, we consider all the evidence in the record, evidence in support of and contrary to the trial court's findings. Id. at 1007-08, 89 S.W.3d at 28-29. Thus, we balance the factors presented in the legal sufficiency argument against the evidence that militates against finding that termination is in the children's best interest. In reviewing all the evidence, we also keep in mind that TDPRS has the burden of proof in termination proceedings. In the Interest of G.M., 596 S.W.2d at 847. We now consider the Holley factors that militate against the trial court's findings.
1. TDPRS's and Appellant's Plan for the Children
The sixth Holley actTDPRS' and appellant's plans for the children weighs against termination of appellant's parental rights. Tanya Bryant, a caseworker for TDPRS, testified that TDPRS' long-term goal for the children was adoption. However, the children were not in an adoptive placement, and there was no evidence to show that these children, given their behavioral problems and special needs, were adoptable. Moreover, TDPRS presented no evidence about the likelihood that the children would be adopted by the same family.
The children's situation in the case at bar is distinguishable from the child's situation at issue in C.H. In C.H., the evidence showed that the child, C.H., had a successful experience in foster care. In re C.H., 45 Tex. Sup.Ct. J. at 1002, 89 S.W.3d at 21. C.H. had remained in the same foster home the entire time he had been in TDPRS care. 25 S.W.3d 38, 46 (Tex.App.-El Paso 2000), rev'd on other grounds, 45 Tex. Sup.Ct. J. 1000 (Tex.2002). Dr. Parks and Court Appointed Special Advocate volunteers reported that C.H. was developing normally and was an emotionally stable, happy baby. 45 Tex. Sup.Ct. J. at 1002, 89 S.W.3d at 21. Dr. Parks recommended that the parental rights of C.H.'s father be terminated. Id. In addition, at the time the termination suit was filed, C.H. was only two years old. 25 S.W.3d at 42. The caseworker in charge of C.H. testified that "C.H.'s age was the predominant permanency factor because a child his age is very adoptable." Id. at 47.
In contrast, C.T.E. and D.R.E. have been in and out of six and nine different *468 foster homes, respectively. Appellant's children were eight and 10 at the time of trial and were suffering from severe emotional and behavioral problems. Although Bryant responded affirmatively to the question of whether children with special needs ever get adopted, she clearly did not claim to have the same positive outlook as C.H.'s caseworker.
Moreover, while in prison, appellant has taken steps to prepare himself to reunite his family. For example, he has completed two parenting courses, a drug program, anger management classes, and job training classes in welding. One of the parenting classes, entitled "Papas and their Children," is a participation program that is designed to teach incarcerated parents how to interact with their children upon their release. Appellant sent a letter to Bryant asking her to allow his children to participate, but received no response. Appellant has also worked with inmates' families and town children in various programs without supervision.
2. Stability of the Home
Bryant testified that the children have been in a stable home since they have been in the care and supervision of TDPRS. Yet, it is undisputed that D.R.E. has been in nine different foster homes in approximately six years. Similarly, C.T.E. has been in and out of six different foster homes in the approximately five years he has been in TDPRS' care. The children do not have the stability that comes from being with each other because TDPRS has placed them in separate homes. While appellant has not been able to provide a stable home for his children due to his imprisonment, it is evident that TDPRS has likewise not been able to achieve this goal.
3. Emotional and Physical Danger to the Children
The third Holley factoremotional and physical danger to the childrenweighs against termination of appellant's parental rights. TDPRS has failed to adequately protect the children from emotional and physical danger. Evidence presented at trial indicated that D.R.E. was sexually abused while in TDPRS's care. And, as stated above, the children have been in and out of numerous foster homes.
There was no evidence that the children would be in emotional or physical danger if appellant's parental rights were not terminated. Appellant's criminal behavior is not the type from which it can be inferred that the children will be in emotional or physical danger. Appellant's criminal history is distinguishable from the father in C.H. in three important respects. First, the father in C.H. was convicted of a felony approximately two years before the termination suit was filed. In re C.H., 45 Tex. Sup.Ct. J. at 1002, 89 S.W.3d at 21. In contrast, 11 years had passed between appellant's felony conviction and the time this termination suit was filed. Since his children's birth, appellant has been convicted of only misdemeanors. He has been convicted of only one offense, a Class B misdemeanor, since the trial court's June 10, 1998 order that did not terminate his rights. Secondly, unlike the father in C.H., there is no evidence that appellant is a drug addict or has dealt in drugs since his children's births. Id. This a not a situation where the evidence is undisputed that the parental relationship endangered the safety of the children. Id. at 1006, 89 S.W.3d at 27. Lastly, appellant, unlike the father in C.H., is not serving a long prison sentence as to clearly not be available to parent his children for several years. Appellant expected to be mandatorily released without parole just 10 months after the trial.
4. The Children's Desires
*469 TDPRS presented no evidence of the first Holley factorthe desires of the children.
5. Appellant's Relationship with his Children
In addition to the Holley factors, the children's relationship with their father should be considered. Appellant testified that he tried to set up visitation with his children at least four or five times while he was on parole. He stated that on several occasions, Bryant was unavailable and, on one occasion, the foster mother was unavailable. Thus, appellant visited with his children only two times in 1999. Bryant testified that at least one of appellant's children did not recognize him during the first visit. However, it is undisputed that Bryant told appellant that his children responded better to him than to any other person.

Conclusion
After considering all the evidence in relation to the Holley factors, we conclude that the fact-finder could not have reasonably formed a firm belief or conviction that termination of appellant's parental rights was in the best interest of his children. We recognize that appellant's criminal history is problematic and that there are no effective programs that will teach appellant how to stay out of jail. However, given appellant's progress, plans, and the nature of his criminal history, coupled with the children's unfortunate experience in TDPRS's care, the fact-finder could not have reasonably formed a firm belief that terminating the parental rights of the person with whom the children have the best chance at a family, is in their best interests at this time. Accordingly, the evidence was factually insufficient to establish that the termination was in the best interests of the children.
We sustain appellant's third point of error. Because our holding on appellant's third point of error is dispositive, we decline to address his other points.
We reverse the judgment of the trial court and remand the cause to the court below for further proceedings consistent with this opinion.
NOTES
[1] The Honorable Lee Duggan, Jr., retired justice, Court of Appeals, First District of Texas at Houston, participating by assignment.