Affirmed and Memorandum Opinion filed May 29, 2003









Affirmed and Memorandum Opinion filed May 29, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00604-CV

____________

 

IN THE INTEREST OF G.V. AND R.W.

 

 



 

On
Appeal from the 314th District Court

Harris County, Texas

Trial
Court Cause No. 00-08742J

 



 

M
E M O R A N D U M   O P I N I O N

 

Appellant
R.G.W. challenges the trial court=s termination of his parent-child relationship with his son,
R.W.  Appellant argues his due process
rights were violated when the termination trial occurred concurrently with his
criminal-conviction appeal, which, appellant contends, forced him to choose
between termination of his parental rights or self-incrimination in a criminal
matter. Appellant also challenges the legal and factual sufficiency of the
evidence to support the termination of his parental rights.  We affirm.








I.  Factual and
Procedural Background

Appellant
shot and killed a police officer.  The
investigation of the shooting led police to appellant=s
apartment.  Inside the one-bedroom unit,
the officers found two young children, R.W., a toddler, and G.V., an
infant.  The children=s
mother and another woman were also in the apartment.  Dirty dishes, clutter, car parts, and
clothing were everywhere. When an officer noticed one of the women set the
infant on top of a partially concealed weapon, the officers immediately ordered
everyone to get out of the apartment. 
While securing the apartment, officers discovered a loaded shotgun next
to the door and found another loaded shotgun under the bed.  The officers also found traces of marijuana
and cocaine under the couch.  They
arrested the mother of the children and discovered she possessed marijuana and
unprescribed codeine pills.

The
Children=s
Protective Services Division of the Texas Department of Protective and
Regulatory Services (ACPS@)  removed the children
from the home that day.  CPS then filed a
petition to terminate the parent-child relationship between R.W. and G.V. and
their respective parents.  After a bench
trial, the trial court granted the termination of parental rights as to both
children.  Appellant now appeals the termination of his
parental rights to R.W.[1]

II.  Issues








Appellant
raises three issues on appeal.  First, he
argues his due process rights were violated because the termination trial
occurred while he was appealing his criminal conviction for the capital murder
of the police officer.  Second, appellant
complains his due process rights were violated because he allegedly had to
choose between defending himself at the trial to terminate his parental rights
or forfeiting his Fifth Amendment right against self-incrimination.  Third, appellant challenges the legal and factual
sufficiency of the evidence supporting the termination of his parental rights.

III.  Due
Process

 

 

We
do not reach the merits of appellant=s complaint that his due process rights were violated when the
termination trial occurred concurrently with his criminal-conviction appeal,
unless we first determine that he properly preserved his complaint for
appellate review.[2]

To
maintain a complaint on appeal, a party must present a timely objection to the
trial court, state the specific grounds for the objection, and obtain a
ruling.  Tex. R. App. P. 33.1(a). 
A party may not assert error on appeal if he failed to object or raise
the issue in the trial court.  Bushnell
v. Dean, 803 S.W.2d 711, 712 (Tex. 1991). 
Even constitutional errors, such as due process complaints, are waived
if not raised first in the trial court.  Tex. R. App. P. 33.1; Birdo v. Ament,
814 S.W.2d 808, 811 (Tex. App.CWaco 1991, writ denied) (holding unless the constitutional
error is fundamental, without an objection it is waived on appeal).








Appellant did
not raise his due process complaint in the trial court.  Immediately before trial, appellant=s
attorney presented an oral motion for continuance because appellant desired a
jury trial instead of a bench trial.  The
trial court denied this untimely motion. 
When CPS called appellant to the stand, his attorney objected.  Appellant, however, did not assert that
holding the termination trial while appellant was appealing his criminal
conviction violated his due process rights. 
Instead, appellant asserted that he should have the right to plead his
Fifth Amendment privilege against self-incrimination.  The trial court overruled most of appellant=s
objections, reasoning that CPS was not asking appellant to admit or deny
anything that could be held against him. 
Nonetheless, the objection appellant now presents on appeal is not the
same objection he raised in the trial court. 
Thus, we find appellant failed to preserve error, and we overrule his
first issue.

In his second
issue, appellant argues his due process rights were violated when he had to
choose between his privilege against self-incrimination or termination of his
parental rights.  He argues that the
trial court terminated his parental rights solely because he invoked his
privilege against self-incrimination.  We
find no merit in appellant=s argument.

CPS called
appellant to testify.  Appellant
repeatedly claimed a privilege against self-incrimination, and his attorney
instructed him not to answer questions due to the purported pendency of the
appeal of his criminal conviction.  When
the trial court and CPS=s attorney realized appellant did not plan to testify at the
termination trial, CPS passed the witness.[3]









If appellant
did not want to go to trial on the termination case while his criminal
conviction was on appeal, he could have filed a motion for continuance and
asked the trial court to postpone the family court proceeding.  Under certain circumstances, a parent who is
facing termination of parental rights may obtain a continuance until after the
criminal charges are resolved.[4]  See Tex.
Fam. Code ' 161.2011(a).  Appellant
did not request a continuance under section 161.2011(a) of the Family Code.

Moreover, we
disagree with appellant=s assertion that the facts in this case are analogous to those
in Garrity, and that the trial court forced him to choose between
self-incrimination or termination of his parental rights.  See Garrity v. New Jersey, 385 U.S.
493, 494, 87 S.Ct. 616, 617, 17 L.Ed.2d 562 (1967).  In Garrity, several police officers
were questioned regarding Atraffic ticket fixing.@  Id. at 495, 87
S. Ct. at 617.  Each officer was advised
that any statement could be used against him, or if the officer failed to
answer, his employment could be terminated. 
Id.  The Supreme Court
found the officers were in a AHobson=s choice@ and were forced to decide Abetween self-incrimination or job forfeiture.@  Id. at 496B98,
87 S.Ct. at 618B19; see also In re Verbois, 10 S.W.3d 825, 830B31
(Tex. App.CWaco 2000, orig. proceeding [mand. denied]) (stating that for Garrity
to be on point in a termination-of-parental-rights case, CPS would have to
tell the parent that it would seek termination solely based on any refusal to
answer CPS=s questions).  Here,
appellant was not in a AHobson=s choice.@  CPS never informed him
that it would seek termination of his rights solely because he refused
to answer CPS=s questions.  The trial
court terminated appellant=s parental rights because of evidence in the record C
not because he failed or refused to testify in the termination case.  We overrule appellant=s
second issue.

                             IV.  Legal
and Factual Sufficiency

Finally,
appellant challenges the legal and factual sufficiency of the evidence
supporting the termination of his parental rights to R.W.  

A. Legal Sufficiency

The Texas
Supreme Court recently articulated the standard for a legal sufficiency review
in In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002), stating:  








A[A]
court should look at all the evidence in the light most favorable to the
finding to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that its finding was true.@
 

 

As the reviewing court, we must presume
that the factfinder resolved all disputed facts in favor of its finding, if a
reasonable factfinder could do so.  Id.  We also disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been
incredible.  Id.  We do not disregard undisputed facts.  Id. 
To terminate parental rights, CPS first must prove that the parent acted
harmfully toward the child in at least one of the nineteen ways enumerated in
the Family Code.  See Tex. Fam. Code '
161.001(1).  Second, the termination of
parental rights must be in the best interest of the child.  Id. ' 161.001(2).  CPS must
prove these two factors by clear and convincing evidence.  Id. ' 161.001; see In re J.F.C., 96 S.W.3d at 263B64.


In a nonjury
trial, when findings of fact and conclusions of law are not properly requested
and filed, the reviewing court will presume that the trial court made all
necessary findings to support its judgment. 
Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996).  Here, appellant did not request and the trial
court did not file any findings of fact and conclusions of law.  Thus, implied findings support the
judgment.  See id.  The decree for termination of appellant=s
parental rights to R.W. states that appellant Ahas engaged in conduct or knowingly placed the child with
persons who engaged in conduct which endangers the physical or emotional
well-being of the child.@  A trial court can
terminate parental rights for this reason. 
Tex. Fam. Code ' 161.001(1)(E).








Courts have
held that Aendanger@ means to Aexpos[e] to loss or injury; to jeopardize.@  In
re M.C.,
917 S.W.2d 268, 269 (Tex. 1996).  AAlthough
>endanger=
means more than a threat of metaphysical injury or the possible ill effects of
a less-than-ideal family environment, it is not necessary that the
conduct be directed at the child or that the child actually suffers injury.@
 Id.  Imprisonment of a
parent, standing alone, does not constitute endangerment of a child=s
emotional or physical well-being. 
Nonetheless, imprisonment is a factor the trial court may consider.  See Texas Dep=t
of Human Services v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987).  If the
evidence, including the imprisonment, shows a course of conduct that has the
effect of endangering the physical or emotional well-being of the child, this
evidence supports a finding of termination under section 161.001(1)(E).  Id. at 534.

The record
shows that police officers went to appellant=s apartment because he was a possible suspect in a capital
murder investigation.[5]  A police officer testified to the unkempt and
unsafe condition of the home.  She
described a cluttered apartment with clothing and car parts scattered about,
and dirty dishes in the sink.  The
officer could not remember the apartment having any food for the children.  Additionally, the officers found a loaded
shotgun leaning against the front door and found another loaded shotgun under
the bed, within easy access of R.W., who had been seen wandering around the
apartment.  The loaded weapons were not
the only items that made the home a dangerous place for young children.  The officers discovered narcotics in the
apartment and on the children=s mother.  The officers
discovered so many stolen items in the one-bedroom apartment that they
suspected a fencing operation was afoot.

Appellant left
his child in a very dangerous situation, within easy reach of loaded weapons
and narcotics.  Appellant is incarcerated
under sentence of death based on his conviction for shooting and killing a
police officer.  These actions and
circumstances directly impact R.W.=s physical and emotional well-being.  The evidence, considered in the light most
favorable to the finding, is sufficient to support the trial court=s
conclusion that appellant endangered the well-being of R.W.  See Tex.
Fam. Code ' 161.001(1)(E).








Having found
sufficient evidence of endangering conduct, we now address the best interest of
the child.  See Tex. Fam. Code '
161.001(2).  Texas courts recognize a
strong presumption that the best interest of the child is served by the natural
parent retaining custody.  Wiley v.
Spratlan, 543 S.W.2d 349, 352 (Tex. 1976) (holding A[t]his
court has always recognized the strong presumption that the best interest of a
minor is usually served by keeping custody in the natural parents@).  The factfinder may consider any of the
following factors when determining the best interest of the child:

(A)      the desires of the child; 

(B)       the emotional and physical needs of the
child now and in the future; 

(C)      the emotional and physical danger to the
child now and in the future; 

(D)      the parental abilities of the individuals
seeking custody; 

(E)       the programs available to assist these
individuals to promote the best interest of the child; 

(F)       the plans for the child by these
individuals or by the agency seeking custody; 

(G)      the stability of the home or proposed
placement; 

(H)      the acts or omissions of the parent which
may indicate that the existing parent-child relationship is not a proper one;
and 

(I)        any excuse for the acts or omissions of the parent.

Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).  After
considering the relevant Holley factors and undisputed evidence, but not
evidence a reasonable factfinder could have disbelieved, we find ample support
for the trial court=s finding that termination of appellant=s
parental rights was in the best interest of R.W.  See In re J.F.C., 96 S.W.3d at 266. 








First, CPS
proved appellant cannot meet R.W.=s emotional and physical needs. 
A social worker testified that three-year-old R.W. has no knowledge of
appellant and has had no contact with him during appellant=s
incarceration.  Though appellant
presented a plan of his own in an effort to counter CPS=s
adoption plan for R.W., appellant=s future is highly uncertain. 
He has been sentenced to death based on his conviction for capital
murder, and he remains incarcerated. 
Even if his appeal were successful, there is no evidence to show
appellant could adequately care for R.W. in the future.  Appellant did not show the trial court how he
could meet the emotional and physical needs of R.W.  This factor weighs heavily in terminating his
parental rights.

Second,
appellant did not introduce evidence of any suitable parental abilities.  He left his young son in an apartment with
loaded weapons and illegal narcotics. 
R.W. had access to these weapons and drugs when playing in the
one-bedroom apartment.  Appellant=s
actions and omissions in this regard show that he has placed R.W. in danger,
and has not met the needs of this child to grow up in a safe and secure
environment.  The officer could not
recall seeing any food or beds for the children in the apartment.  All of these factors show appellant lacks the
ability to meet R.W.=s  basic needs and does
not have adequate parental skills.  This
evidence supports termination of appellant=s parental rights.

Third, a
great-uncle and aunt wish to adopt both R.W. and G.V. and provide a future for
the children.  Child Advocates reports
the couple passed a home study evaluation and the children=s
physical and emotional needs were being met in their home.  The stability this proposed placement
promises, coupled with the emotional and physical needs of R.W. now and in the
future, weigh heavily in the court=s finding that termination is in the best interest of R.W.

Fourth, the
trial court terminated the parental rights of R.W.=s
mother, and she has not appealed this termination.  R.W.=s father=s incarceration and death sentence bespeak a fundamental lack
of stability and permanence.  Termination
of appellant=s parental rights at this time allows R.W. a chance to be
adopted by a family that reportedly can provide a nurturing, stable, and
permanent home for him, where he can live and grow up with his half-sibling. 

 








Finally, we
note that a parent=s criminal actions are a factor in determining the best
interest of the child, providing any termination of parental rights is not
additional punishment for a parent=s crime.  See In re
C.T.E., 95 S.W.3d 462, 466 (Tex. App.CHouston [1st Dist.] 2002, pet. filed).  We can consider the length of the parent=s
incarceration, and Awhether it can be inferred from appellant=s
criminal conduct that he has endangered the safety of the children.@  Id.  From appellant=s egregious criminal conduct (capital murder) and death
sentence, we can infer that he endangered the safety of his child.  Moreover, appellant=s
murder of a police officer and subsequent incarceration as a result of that
criminal act endangered the physical and emotional well-being of R.W. 

Looking at all
the evidence in the light most favorable to the trial court=s
finding, a reasonable trier of fact could have formed a firm belief that
appellant endangered the well-being of R.W. and that termination of appellant=s
parental rights was in R.W.=s best interest.  We
conclude the evidence is legally sufficient to support termination of appellant=s
parental rights.

B.  Factual Sufficiency

Appellant also
challenges the factual sufficiency of the trial court=s
findings.  The Texas Supreme Court
recently articulated the proper standard of review for factual sufficiency in
termination proceedings. We should determine whether the evidence is such that
a factfinder could reasonably form a firm belief or conviction about the truth
of the CPS=s allegations.  See In
re C.H., 89 S.W.3d 17, 25 (Tex. 2002). 
In making this determination, we consider all the evidence in the
record, evidence in support of and contrary to the trial court=s
findings.  Id. at 28B29.  Having performed this analysis, we find clear
and convincing evidence in the record to support the finding that appellant=s
parental rights should be terminated.  








Appellant did not present any evidence at the trial level and
does not direct us to any evidence that supports his arguments on appeal.  CPS presented uncontroverted evidence about
the unsafe nature of the home, the dangers and risks to which appellant
subjected R.W., the physical and emotional needs of the child now and in the
future, and appellant=s inability to adequately meet those needs or to provide any
semblance of stability or permanence for the child.  The evidence supports the factfinder=s
firm belief or conviction that termination of appellant=s
parental rights would be in the best interest of R.W.  Accordingly, we find the evidence factually
sufficient to support termination, and therefore overrule appellant=s
third issue.

Having overruled all of appellant=s issues, we uphold the termination of his parental rights to
R.W. and affirm the trial court=s judgment.

 

 

 

 

/s/        Kem Thompson Frost

Justice

 

 

Judgment rendered and Memorandum Opinion filed May 29, 2003

Panel consists of Chief Justice Brister, Justices Hudson and
Frost.

 

 











[1]  Appellant also
complains about the termination of parental rights to G.V. and attempts to
argue he has standing to contest the termination of parental rights to
G.V.  Appellant, however, is not the
biological father of G.V., and neither the biological mother nor the biological
father of G.V. appealed termination of their parental rights.  Appellant does not have standing to appeal
the termination of parental rights between G.V. and his biological mother or
father.  See In re P.R., 994
S.W.2d 411, 417 (Tex. App.CFort Worth 1999, pet. dism=d w.o.j.) (holding a mother does not have standing to
appeal the termination of the alleged biological father=s parental rights), disapproved of on other grounds
by In re J.F.C., 96 S.W.3d 256, 267 (Tex. 2002). 





[2]  We have no
evidence of appellant=s criminal-conviction appeal in the record.  However, we assume appellant was appealing
his conviction during the termination trial below. 





[3]  CPS asked
appellant a total of four questions.  The
trial court instructed him to answer only two of the four questions.  Appellant stated he was the same R.G.W.
charged in the criminal case, and, when given an exhibit and asked if it was a
copy of the judgment, he answered he had no Alegal
knowledge.@





[4]  Even if
appellant had filed a motion for continuance, the trial court might have had
grounds to deny it.  The statute provides
for a continuance if the criminal charges Adirectly
relate to the grounds for which termination is sought.@  Tex. Fam. Code ' 161.2011(a). 
Here, the criminal charge appellant was appealing was not the direct
reason for his termination of parental rights. 
C.f. In re M.C.M., 57 S.W.3d 27, 35 (Tex. App.CHouston [1st Dist.] 2001, pet. denied) (continuing
termination case when the criminal charges were injury to a child and child
endangerment).  Additionally, the trial
court may grant the continuance only if it finds the continuance is in the best
interest of the child.  Tex. Fam. Code ' 161.2011(a); In re M.C.M., 57 S.W.3d at 36B37 (stating trial court has the option of denying
continuance, if it is in the best interest of the child, and the case can
proceed to trial). 





[5]  Appellant
contends there is no evidence to prove the apartment was actually his
apartment.  We disagree.  The record contains uncontradicted testimony
by a police officer that she went Ato the
apartment of [R.W.=s mother] and [R.G.W.].@  If appellant wanted to argue the apartment in
question was not his or if he wanted to argue he had no knowledge of guns or
narcotics in the apartment, he should have introduced testimony to contradict
the officer=s testimony.