NO. 07-09-0019-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 20, 2009

_____

IN THE INTEREST OF C.H., T.H. AND S.H., CHILDREN
_____

FROM THE 395TH DISTRICT COURT OF WILLIAMSON COUNTY;

NO. 07-1763-F395; HONORABLE MICHAEL JERGINS, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Through two issues, father and mother appeal the final order of the trial court terminating their parental rights to C.H., T.H. and S.H.  In their first issue, they contend the evidence at trial was factually insufficient to support the trial court's finding that termination of parental rights was in the best interest of each child.  In their second issue, they argue if their first issue is sustained we should vacate the trial court's appointment of appellee, the Texas Department of Family and Protective Services, as sole managing conservator of the children.  We overrule the first issue of father and mother, do not reach their second issue, and affirm the judgment of the trial court.

## Discussion

The Department's petition to terminate the parental rights of father and mother was tried to the court on December 2, 2008. The department presented its case-in-chief through the testimony of a Child Protective Services investigator and a caseworker. Father and mother testified on their own behalves.

At the time of trial C.H., T.H. and S.H. were fourteen, thirteen and six years old respectively. The record shows that between 2004 and 2007, the Department investigated nine referrals involving father and mother. The reports included claims of domestic violence, abuse and neglect of the children, and use of cocaine, ecstasy and methamphetamine by father and mother.

According to mother's testimony, when C.H. was thirteen she allowed herself to be arrested for shoplifting in place of mother, because mother had an outstanding arrest warrant for possession of a controlled substance. Father and mother also acknowledged another event that led to a report of abuse and neglect when a weapon was discharged during an argument between them while C.H. was present. Mother testified father threatened to commit suicide. The Department was unable to fully investigate all the reports because father and mother regularly moved. The Department investigator listed seven reports with respect to which the Department was "unable to locate the family." The trial court found their frequent moves amounted to a failure to cooperate with the Department by father and mother.

In May 2007, father and mother were arrested in the presence of the children. In the resulting absence of their parents, the children stayed with father's sister. In an interview in her home with the Department, the children expressed fear of their parents.

The Department was named temporary managing conservator of the children on August 7, 2007. The following day it discovered mother had removed T.H. and S.H. from their aunt's home, leaving C.H.[1] C.H. chose to remain because she believed her parents continued using methamphetamine. Father and mother did not return S.H. and T.H. to the custody of the Department despite an order placing the children in foster care. Rather, they left the state and moved to South Carolina, where members of mother's family live. According to mother, South Carolina social services personnel were aware of the situation and met with her shortly after their arrival in South Carolina.

In June 2008, mother was arrested in South Carolina and charged with felony assault and battery. As a result, she was incarcerated in South Carolina from June 15, 2008, until obtaining release on bond on August 19. According to the trial testimony of mother, the South Carolina charges were reduced to a misdemeanor with a pending plea bargain offer of three years probation. The Department established family service plans for father and mother but by the time of trial neither had fulfilled all their plan requirements.

At trial, mother acknowledged substantial prior drug use but denied using methamphetamine during the preceding year. She further acknowledged attempting to

---

[1] Brief testimony indicated a trespass charge was filed against mother as the result of her removal of T.H. and S.H. from the placement, and that mother was arrested and released on that charge when she returned to Texas in 2008.

3

parent the children under the influence of illegal drugs between 2004 and August 2007. The caseworker agreed that mother admitted having a problem with crystal methamphetamine. Mother received two drug tests as part of her service plan. Both produced negative results. About five months before trial, a hair follicle drug test of father was positive for cocaine, marijuana and benzodiazepine. The test measured the preceding ninety days. During this period father had possession of T.H. and S.H. Father offered no explanation for the test result. Mother testified she last saw father use marijuana in April 2008. Father averred he last used marijuana some five months before trial. He acknowledged a prior charge of possession of methamphetamine, and agreed to previous abuse of this drug. He chose not to attend Alcoholics Anonymous or Narcotics Anonymous but identified peer pressure as a trigger for his use of illegal drugs. In a jail interview with the Department, mother stated that she and father had used illegal drugs to the point of losing everything.

At the time of trial, mother and father each were working at two jobs. Both were paying child support. Father lived with his sister. Evidence of the stability of this environment was not presented. According to father, he was enrolled in a two-year community college program leading to an associate's degree in construction management. He added that his father agreed to pay the expenses of his education.

After mother's June 2008 arrest, South Carolina authorities cooperated with the Department. A Department employee returned T.H. and S.H. to Texas, where they joined C.H. in a placement with their paternal grandparents. The Department made arrangements for each child to receive therapy. In the opinion of the caseworker, the

4

school performance of the children was acceptable. He also agreed that the grandparental placement was appropriate to meet the needs of the children.

According to the caseworker, the children "act out" when contacted by mother. Although not clearly expressed by the record, it appears C.H. was in foster care for a time during her parents' stay in South Carolina. In the placement, she destroyed property and "acted out." On the day of trial, T.H. was involved in an altercation at school with a teacher. The police were summoned and T.H. was charged with disorderly conduct. It was expected he would also receive in-school suspension. Although C.H., T.H. and S.H. did not testify at trial, the record establishes their clear opposition to termination. Their guardian ad litem told the court the children "desperately" wanted to be reunited with their parents. The caseworker agreed it is not unusual for children to want to be reunited with their parents, regardless of prior abuse.

The caseworker opined that because of father's prior choices he would be a danger to the children. It was also his opinion that neither parent was capable of providing a safe environment for the children. He did not believe it was in the best interest of the children to wait for father and mother to complete their family service plans.

At the conclusion of trial, the court terminated the parent-child relationship between father and mother and C.H., T.H. and S.H. and appointed the Department managing conservator. It made findings that father and mother 1) knowingly placed or knowingly

allowed the children to remain in conditions or surroundings which endangered[2] their physical or emotional well-being; 2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and 3) failed to comply with a court order specifically established to obtain return of the children. Tex. Family Code Ann. § 161.001(1)(D),(E),(O) (Vernon 2008). It further found mother constructively abandoned C.H. Tex. Family Code Ann. § 161.001(1)(N) (Vernon 2008).

## Analysis

Father and mother acknowledge the evidence sufficiently supports at least one termination ground. Through their first issue they argue, however, the evidence was factually insufficient to support the finding of the trial court that termination of the parent-child relationship was in the best interest of the children. Their argument rests on the expressed desire of the children to remain with their parents.

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the petitioner must establish one ground listed under subdivision (1) of the statute and must also prove that termination is in the best interest of

---

[2] "'Endanger' means to expose to loss or injury; to jeopardize." *Texas Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987). Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffer injury." *Id.* Illegal drug use by parents or care givers supports the conclusion that the children's surroundings endanger their physical and emotional well-being. *In re J.T.G.,* 121 S.W.3d 117, 125 (Tex.App.–Fort Worth 2003, no pet.).

the child.  Tex. Fam. Code Ann. § 161.001 (Vernon 2008); *In re J.L.,* 163 S.W.3d 79, 84 (Tex. 2005).  When reviewing the evidence for factual sufficiency, in a proceeding to terminate the parent-child relationship, the court of appeals considers the entire record and determines whether a factfinder could reasonably form a firm belief or conviction that both statutory elements for termination have been satisfied.  *In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002).  "'If, in light of the entire record, the disputed evidence that a reasonable factfinder could not credit in favor of the finding is so significant that a factfinder could not reasonably form a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient.'"  *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006) *(quoting In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002)). There is a strong presumption that keeping a child with a parent is in the best interest of the child.  *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).  It is also presumed that prompt and permanent placement of the child in a safe environment is in the best interest of the child.  Tex. Fam. Code Ann. § 263.307(a) (Vernon 2008).

The Supreme Court of Texas has identified factors for consideration by the trier of fact in determining whether termination is in the best interest of the child: the desires of the child; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the child; the plans for the child by these individuals or by the agency seeking custody; the stability of the home or proposed placement; the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and any excuse for the acts or omissions of the parent.  *Holley v. Adams,* 544 S.W.2d 367,

372 (Tex. 1976). However, these considerations are not exhaustive nor is proof of each a condition precedent to termination of the parent-child relationship. *In re C.H.,* 89 S.W.3d at 27. The absence of evidence of some of the *Holley* considerations does not preclude the factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly in the face of undisputed evidence that the parental relationship endangered the safety of the child. *Id.* The best interest analysis evaluates the best interest of the child, not the parent. *In re S.A.P.,* 169 S.W.3d 685, 707 (Tex.App.–Waco 2005, no pet.).

The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the children warrants termination of the parent-child relationship. *In re C.H.,* 89 S.W.3d at 28; *In re P.E.W.,* 105 S.W.3d 771, 779 (Tex.App.–Amarillo 2003, no pet.). And a best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re S.H.A.,* 728 S.W.2d 73, 86-87 (Tex.App.–Dallas 1987, writ ref'd n.r.e.). A trier of fact may measure a parent's future conduct by his or her past conduct and determine that it is in the child's best interest to terminate parental rights. *In re D.L.N.,* 958 S.W.2d 934, 941 (Tex.App.–Waco 1997, pet. denied), *overruled on other grounds by In re C.H.,* 89 S.W.3d at 26.

The children desire the affections and nurture of their natural parents, a fact the Department pointed out is not atypical, despite past abuse in a family. But the desire of the children alone is not determinative of their best interest. The law recognizes what

virtually every parent knows, "[w]hat children want . . . is not always in their best interest." *Phillips v. Tex. Dep't of Protective & Regulatory Servs.,* 25 S.W.3d 348, 356 (Tex.App.–Austin 2000, no pet.). Here, the undisputed facts present a history of father's and mother's instability in relationships, employment and home life. Punctuating these accounts were episodes of abuse of illegal drugs including methamphetamine, and other acts of bad conduct by father and mother. Father's testimonial self-expression of sobriety lacked a corroborating anchor in the record. Father could not account for the recent positive hair follicle drug test and chose not to attend addiction support groups. Regular evasive family moves were the parents' means of dealing with the Department. Orders of the court affecting the children were disregarded. When stress rose in 2007, father and mother found it expedient to remove T.H. and S.H. from placement and flee the state. Despite involvement with the Department for well over a year, father and mother did not complete their family service plans. Father lives in Texas and mother in South Carolina. How this arrangement would serve the best interest of the children was not shown. Father voiced laudable personal education and career plans but at the time of trial had no proven job history and lived with his sister. The trial court could have viewed mother's focus to be on resolution of her pending South Carolina criminal charges. The trial evidence showed placement of the children with their grandparents, despite the problems at school of T.H., was sufficient for the needs of the children.

Most importantly, however, juxtaposed with the desire of the children for reunification with their parents are the trial court's unchallenged findings that father and mother endangered the physical or emotional well-being of the children. To return children

9

to an endangering environment does not serve their best interest despite expressed affections.

> Although a child's love of his natural parents is a very important consideration in determining the best interests of the child, it cannot override or outweigh the overwhelming and undisputed evidence showing that the parents placed or allowed the child to remain in conditions, and engaged in conduct or placed the child with persons who engaged in conduct, which endangers the physical and emotional well-being of the child. The child's love of his parents cannot compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life.

*In re W.S.M.,* 107 S.W.3d 772, 773 (Tex.App–Texarkana 2003, no pet.).

Given the unchallenged findings and supporting evidence, we conclude, notwithstanding the desire of the children, the trial court could have formed a firm belief or conviction that termination of the parental rights of father and mother was in the best interest of the children.[3] We overrule the first issue of father and mother.

## Conclusion

Because we overrule the first issue of father and mother, we do not reach their second issue, which is conditioned on sustaining their first issue. *See* Tex. R. App. P.

---

[3] Father and mother point to *In re S.R.L.,* 243 S.W.3d 232 (Tex.App.–Houston [14th Dist.] 2007, no pet.); *Yonko v. Dep't of Family and Prot. Servs.,* 196 S.W.3d 236 (Tex.App.–Houston [1st Dist.] 2006, no pet.); and *In re C.T.E.,* 95 S.W.3d 462 (Tex.App.–Houston [1st Dist.] 2002, pet. denied) as examples of cases reversing judgments of termination on the factual insufficiency of evidence supporting a best interest finding. But father and mother candidly add that each of those cases is distinguishable from the one at bar. We agree. There was evidence in each of those cases that the terminated parents had shown a level of responsibility and commitment to parenting that is absent from this record.

47.1.  We affirm the final order of the trial court terminating the parental rights of father and mother to C.H., T.H. and S.H.


James T. Campbell
Justice