Opinion issued December 3, 2009

 

 




 







In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00045-CV

____________


LARRY WAYNE HINES, Appellant


V.


TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,
Appellee






On Appeal from the 314th District Court

Harris County, Texas

Trial Court Cause No. 2007-02086J






MEMORANDUM OPINION


 After a bench trial, the trial court terminated the parental rights of appellant,
Larry Wayne Hines, to his son, N.J. We determine whether the evidence is factually
sufficient to support the trial court's finding that termination was in N.J.'s best
interest. We affirm.

BACKGROUND


 N.J. was the son of appellant and Jennifer J., his common-law wife. TDFPS
was appointed temporary sole managing conservator of N.J. in early 2007, when the
mother tested positive for cocaine. TDFPS moved to terminate appellant's and
Jennifer J.'s parental rights in late 2007.

 After a hearing that appellant, who was then in jail, did not attend because he
refused a bench warrant, the trial court ordered Jennifer J.'s and appellant's parental
rights terminated. In its termination decree, the trial court found that TDFPS had
proved the sole statutory ground for termination, which was Texas Family Code
section 161.001(1)(M) (the parent "had his . . . parent-child relationship terminated
with respect to another child based on a finding that the parent's conduct was in
violation of Paragraph (D) or (E) . . . ."), (1) and that termination was in N.J.'s best
interest. Only appellant appealed.

STANDARD OF REVIEW


 In order to terminate parental rights under section 161.001 of the Texas Family
Code, the petitioner (here, TDFPS) must establish that the parent engaged in conduct
enumerated in one or more of the subsections of section 161.001(1) and must also
show that termination of the parent-child relationship is in the best interest of the
child. Tex. Fam. Code Ann. § 161.001 (Vernon 2008); Richardson v. Green, 677
S.W.2d 497, 499 (Tex. 1984). The petitioner must prove both prongs and may not
rely solely on a determination that termination is in the best interest of the child. Tex.
Fam. Code Ann. § 161.001; Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531,
533 (Tex.1987).

 It is well-established that parental rights are of constitutional dimension and
are "'far more precious than property rights.'" Holick v. Smith, 685 S.W.2d 18, 20
(Tex. 1985) (quoting Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212
(1976)). Because of the great importance of parental rights, grounds for termination
must be supported by clear and convincing evidence rather than a mere
preponderance. In re C.H., 89 S.W.3d 17, 23 (Tex. 2002). Clear and convincing
evidence refers to a degree of proof that will produce in the mind of the factfinder a
firm belief or conviction as to the truth of the allegations sought to be proved. Id. at
25.

 When conducting a factual-sufficiency review of the evidence in a termination-of-parental-rights case, we examine the entire record to determine whether "the
disputed evidence that a reasonable factfinder could not have credited in favor of the
finding is so significant that a factfinder could not reasonably have formed a firm
belief or conviction" that the two prongs of section 161.001 were met. In re J .F.C.,
96 S.W.3d 256, 266 (Tex. 2002); see Tex. Fam. Code Ann. § 161.001. If the
evidence that could not be credited in favor of the finding is so great that it would
prevent a reasonable fact-finder from forming a firm belief or conviction that either
termination was not in the best interest of the child, or none of the grounds under
section 161 .001(1) was proven, the evidence will be factually insufficient, and the
termination will be reversed. In re J.F.C., 96 S.W.3d at 266.

BEST INTEREST


 In a single issue, appellant challenges the factual sufficiency of the evidence
showing that termination of his parental rights to N.J. was in the child's best interest.

A. The Law

 The factfinder may consider the following non-exclusive factors in determining
the best interest of the child: (a) the desires of the child; (b) the emotional and
physical needs of the child, now and in the future; (c) the emotional and physical
danger to the child, now and in the future; (d) the parental abilities of the individuals
seeking custody; (e) the programs available to assist these individuals to promote the
best interest of the child; (f) the plans for the child by these individuals or by the
agency seeking custody; (g) the stability of the home or proposed placement; (h) the
acts or omissions of the parent that may indicate that the existing parent-child
relationship is not a proper one; and (i) any excuse for the acts or omissions of the
parent. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not
exhaustive, and absence of evidence for some of these factors does not preclude a
fact-finder from forming a reasonably strong belief that termination is in the best
interest of the child. In re C.H., 89 S.W.3d at 27.

 Although criminal history is a factor in the determining a child's best interest, 
it is not dispositive. In re C.T.E., 95 S.W.3d 462, 466 (Tex. App.--Houston [1st
Dist.] 2002, pet. denied). "Termination of parental rights should not become an
additional punishment for imprisonment for any crime." Id. "Thus, in determining
the weight of this factor [criminal history], we consider the expected length of [the
parent's] imprisonment and whether it can be inferred from [his] criminal conduct
that he has endangered the safety" of the child. Id.

B. Discussion

 N.J., being just under 2 years old at the time of the hearing, was too young to
express his desires, and there was thus no evidence of Holly factor (a). Likewise,
TDFPS produced no evidence of Holly factors (b), (c), (f), or (g). (2) 

 What TDFPS did produce was evidence of appellant's lengthy criminal record,
spanning 20 years. Most of appellant's offenses preceded N.J.'s birth, and many of
them were misdemeanors or state-jail felonies that were non-violent. However,
appellant had six convictions, either state-jail-felonies or misdemeanors, involving
violence or its threat, although not against N.J.: 

 assault (class A misdemeanor): offense and conviction in
September 1986

 2 months in jail


 terroristic threat (including finding of family violence): offense
in October 1999, conviction in November 1999

 18 days in jail


 assault on a family member: offense in August 2001, conviction
in August 2001

 75 days in jail


 assault on a family member (N.J.'s mother): (3) offense in April
2002, conviction in December 2002

 180 days in jail


 assault on a family member (N.J.'s mother): (4) offense in June
2002, conviction in December 2002

 180 days in jail


 assault on a family member (N.J.'s mother): (5) offense in February
2005, conviction in November 2006

 14 days in jail


 Appellant also had multiple convictions for theft, including after N.J.'s birth: (1) two
for misdemeanor theft in 2000 and 2001 (31 and 90 days); (2) two for third-offender
theft (13 months in state jail, concurrent); and (3) one for theft by check in November
2006, after N.J.'s birth (two weeks in jail). Appellant's remaining convictions
included one for possession with intent to deliver less than 28 grams of crack cocaine
(1991: 5 years in prison, probated for 10 years (6)), one for unauthorized use of a vehicle
(1995: 180 days in jail), one for delivery of less than one gram of cocaine (1998: 12
months in state jail), two for driving while license suspended (1999 and 2001: 10
days in jail for each), and harassment (2002: 30 days in jail). 

 The above, undisputed evidence indicates that appellant had a lengthy criminal
history, with 17 convictions total, 14 of which had occurred in the last 10 years; that
he evidenced a repeated tendency to commit offenses on the heels of his release from
jail or prison for prior offenses; that one offense (theft) occurred after N.J.'s birth; and
that three of his offenses were for violence against the very woman who would
become N.J.'s mother and who was the mother of another child to whom appellant's
parental rights had been terminated for, among other things, endangerment. In fact,
two of appellant's assaults against his common-law wife occurred when she was
pregnant with their first child, and a third assault against her occurred only two and
a half months before the decree terminating his rights to that child was signed. 
Additionally, appellant's counsel told the court that appellant was once again jailed
for an unspecified offense at the time of the hearing, advising that appellant had
refused to be bench-warranted for the hearing, contrary to counsel's advice, because
appellant "wanted to conclude his criminal matter up there." The trial court could
reasonably have read that appellant's refusal to appear for his hearing, despite the
advice to attend under a bench warrant, itself showed lack of interest in the case or
in N.J. 

 All of the above was relevant to Holly factors (h) (that the existing parent-child
relationship is not a proper one) and (c) (emotional and physical danger to the child
in the future). Termination of parental rights should never become an additional
punishment for the parent's imprisonment. See In re C.T.E., 95 S.W.3d at 466. Here,
however, appellant's criminal history was lengthy, was repeated, resulted in
appellant's incarceration for periods ranging from a few days to months to years, and
evidenced repeated violence toward the child's mother, who was pregnant with
another child during two beatings. Under these circumstances, and despite TDFPS's
failure to present any evidence of the remaining Holly factors, we hold that the trial
court could have formed a firm belief or conviction that termination was in the best
interest of N.J. See Callahan v. Brazoria County Children's Protective Servs. Unit,
No. 01-01-00916-CV, 2003 WL 21299952, at *10 (Tex. App.--Houston [1st Dist.]
June 5, 2003, no pet.) (memo. op.) (in overruling challenge to factual sufficiency of
evidence showing best interest, considering, in addition to evidence that proposed
placement was safe and appropriate, that father was violent towards child's mother,
was imprisoned for having had sexual relationship with underage girl, smoked
marihuana before incarceration, and was convicted of offense of unauthorized use of
vehicle), but see In re C.T.E., 95 S.W.3d at 464, 466 (discounting importance of
father's criminal history because father would soon be released and crimes were not
type from which danger to children's safety could be inferred, when total number of
crimes was four over 11-year period, and when only one offense was assault of
children's mother).

 In support of his factual-sufficiency challenge, appellant relies on the
statements of N.J.'s paternal grandmother as to the conditions of the temporary
placement of N.J. with family in Maryland. However, the grandmother did not
testify: rather, she spoke informally with the trial court before the parties began
presenting evidence, and neither party called her as a witness. Accordingly, her
statements were not evidence. See Cauble v. Key, 256 S.W. 654, 655 (Tex. Civ.
App.--Austin 1923, no writ) ("'Testimony' has been defined as a statement made by
a witness under oath in a legal proceeding.").

CONCLUSION


 We overrule appellant's sole issue and affirm the judgment of the trial court.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Bland and Massengale.
1. The prior child was also the son of appellant and Jennifer J. The undisputed evidence
showed that the prior termination decree was based on Texas Family Code sections
161.001(1)(E) (endangerment), 161.001(1)(N) (constructive abandonment), and
161.001(1)(O) (failure to comply with court order).
2. TDFPS's counsel represented to the court that that a home-study had been done in
N.J.'s temporary Maryland home, but neither she nor the court could locate the report. 
The record contains a "Permanency Plan and Permanency Progress Report," dated
before the hearing and filed the same date as the hearing. That report indicates that
"[t]he current placement of the child [in Maryland] continues to be safe and
appropriate because the caregivers have been evaluated and found to be capable of
providing the child with a safe, secure, protective, nurturing environment, as well as
meeting the child's emotional and mental needs." However, the report was not
admitted into evidence or discussed. Accordingly, we cannot consider it in our
sufficiency review.
3. The complaint to which appellant pleaded guilty alleged that he had slapped N.J.'s
mother, tripped her, and beaten her "all over her body" with a belt.
4. The complaint to which appellant pleaded guilty alleged that he had beaten N.J.'s
mother with a belt (as he had done in April of that year).
5. The complaint to which appellant pleaded guilty alleged that he had struck N.J.'s
mother on and about her head and had seized her head and torso with his hands.
6. Appellant's community supervision was revoked in 1992 for the offense of giving a
false report to police, and a sentence of 5 years was imposed.