In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00466-CV**
_____


**IN THE INTEREST OF J.L.C.**


**On Appeal from the 317th District Court**
**Jefferson County, Texas**
**Trial Cause No. C-216,712-A**


**MEMORANDUM OPINION**

M.L.C. Jr. (Father) appeals from the judgment terminating his parental rights to a minor, J.L.C., in a suit filed by the appellee, K.R.C. (Mother).[1] In five issues, Father contends the trial court erred by failing to *sua sponte* appoint an attorney to represent Father in the private termination proceedings in the trial court, and Father challenges the legal and factual sufficiency of the evidence supporting the trial court's findings as to each of the three grounds for involuntary termination found

---

[1] For purposes of confidentiality, we refer to the parties by their initials and their relationships to the child. *See* Tex. R. App. P. 9.8.

1

by the trial court, as well as the trial court's finding that termination is in the best interest of the child. We affirm the trial court's judgment.

## Legal and Factual Sufficiency

Issues one through four challenge the legal and factual sufficiency of the evidence supporting the trial court's termination findings. To terminate a parent-child relationship, it must be shown by clear and convincing evidence that the parent has committed at least one of the predicate acts listed in section 161.001(1) of the Texas Family Code and that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2) (West 2014). Clear and convincing evidence is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

In reviewing the legal sufficiency of the evidence in a parental rights termination case, the reviewing court "should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* However, we are not required to disregard all evidence that

2

does not support the finding. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id*.

In reviewing the factual sufficiency in a parental termination case, the reviewing court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). The question we must answer is "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id*. (quoting *C.H.*, 89 S.W.3d at 25). We consider whether a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. In our review, we must be careful to "provide due deference to the decisions of the factfinder, who, having full opportunity to observe [the] witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

"Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the

3

child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The trial court made findings on three of the grounds listed in section 161.001(1) of the Texas Family Code, finding by clear and convincing evidence that Father: "voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months;" "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;" and "knowingly engaged in criminal conduct that has resulted in the parent's[] conviction of an offense[] and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition[.]" *See* Tex. Fam. Code Ann. § 161.001(1) (C), (E), (Q).[2]

Documents admitted into evidence during the trial establish that Father was convicted and received concurrent five-year sentences for possession of child pornography and possession of a controlled substance. Father testified that he had been incarcerated for two years at the time of the trial. From the documents and from Father's statement that he had served only two years of his concurrent five-

---

[2] In her original petition, Mother denied Father's previous acknowledgement of paternity. *See generally* Tex. Fam. Code. Ann. § 160.308 (West 2014). She testified that Father is not the child's biological father. Father testified that he is not J.L.C.'s biological father, but he was adjudicated to be J.L.C.'s father in 2012. The trial court's judgment includes a finding that Father is not the biological father of J.L.C. *See generally id.* § 160.309 (procedure for challenging the acknowledgment or denial of paternity). That finding is not challenged in this appeal.

year sentences, the trial court could reasonably infer that three years remained to be served on Father's sentences when Mother filed the petition.

Father argues that the evidence is insufficient because he might receive parole. In his trial testimony, Father stated that he was eligible for parole, but it had been set off for a year. Father indicated that he was under parole review at the time of the trial but conceded that he might not receive parole in his next review. "Mere introduction of parole-related evidence . . . does not prevent a factfinder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years." *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006). The trial court could conclude that Father's possible release on parole was mere conjecture. *See id.*

With regard to whether as a consequence of his incarceration Father would be unable to care for the child, "[c]ases discussing the incarcerated parent's provision of support through other people contemplate that the support will come from the incarcerated parent's family or someone who has agreed to assume the incarcerated parent's obligation to care for the child." *Id.* at 110. Mother had custody of J.L.C. and her efforts to care for the child were not provided on behalf of Father, particularly where she was seeking to terminate his rights. *See id.* Mother testified that Father did not contribute at all to the support of J.L.C. in the last two years. Father argues that the record shows he has made arrangements with

5

his parents to help support the child during Father's incarceration. In response to a question asking whether he had contributed financially during his incarceration, Father stated that his family "gave money on top of money on top of money." The trial court could reject this testimony as too ambiguous to establish that Father's parents had been meeting his support obligations on his behalf. Father's parents testified during the trial, but neither witness stated that they would financially support J.L.C. or provide J.L.C.'s care during Father's remaining incarceration. The Father's proposed caregivers, his parents, neither testified that they would act as caregivers during their son's incarceration nor stated that they were willing and possess the resources to provide care for the child. On this record, the factfinder could reasonably conclude that the Father would be unable to care for the child. *See In re Caballero*, 53 S.W.3d 391, 396 (Tex. App.—Amarillo 2001, pet. denied).

Viewing the evidence in the light most favorable to the trial court's finding under subsection 161.001(1)(Q), we conclude that the trial court reasonably could have formed a firm belief or conviction that Father knowingly engaged in criminal conduct that has resulted in his conviction and imprisonment and an inability to care for J.L.C. for not less than two years from the date of the filing of the petition. *See J.F.C.*, 96 S.W.3d at 266. Based on our review of the entire record, we further conclude that the disputed evidence could have been reconciled in favor of the trial court's finding or was not so significant that the trial court could not reasonably

6

have formed a firm belief or conviction that as a result of Father's criminal conduct, Father would be incarcerated and unable to care for the child while he remained incarcerated and that he would remain incarcerated for two years from the date of the filing of the petition. *Id.* Accordingly, we hold that the evidence was legally and factually sufficient to support the subsection 161.001(1)(Q) finding. We overrule issue three.

In light of our conclusions that factually and legally sufficient evidence support termination under subsection 161.001(1)(Q), we need not address Father's legal and factual sufficiency arguments raised in issues one and two, that relate to alternative termination grounds. *A.V.*, 113 S.W.3d at 362.

## Best Interest of the Child

In issue four, Father challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination is in the best interest of the child. *See generally* Tex. Fam. Code Ann. § 161.001(2). Regarding the child's best interest, we consider a non-exhaustive list of factors: (1) desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individual seeking custody; (5) programs available to assist this individual to promote the best interest of the child; (6) plans for the child by the individual or by the agency seeking custody; (7) stability of the home or proposed

7

placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). In reviewing the trial court's decision to terminate a parent's relationship with a child, we consider that "there is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). The party seeking termination need not prove that each *Holley* factor favors termination. *C.H.*, 89 S.W.3d at 27. A trial court's best interest finding "is not dependent upon, or equivalent to, a finding that the child has been harmed by abuse or neglect or is in danger of such harm[,]" but rather "'best interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013).

Father argues his incarceration does not automatically establish that termination is in the best interest of the child. A parent's imprisonment is not automatic grounds for termination. *In re S.R.L.*, 243 S.W.3d 232, 236 (Tex. App.—Houston [14th Dist.] 2007, no pet.). It is, however, a factor to be considered in determining the child's best interest, in light of the expected length of the imprisonment. *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). In his trial testimony, Father suggested that he was in the parole review process and might be granted parole, but Father had previously violated the

8

terms of a supervised release, and he was incarcerated for a serious sexual offense, so it would be reasonable for the trial court to consider that Father might be made to serve his entire sentence in prison.

Mother and Father provided conflicting testimony regarding Father's lifestyle when he is not incarcerated. According to Mother, Father was an abusive alcoholic who has never tried to quit drinking. Mother claimed Father became violent with her on more than one occasion, and that violence occurred in J.L.C.'s presence. She testified that Father drove while intoxicated with J.L.C. in the vehicle. Father denied driving while intoxicated when J.L.C. was in the vehicle with him. Father testified that he committed the drug offense before J.L.C.'s birth, and claimed that he never failed a drug test while he was on community supervision. According to Father, the only offenses he committed after J.L.C.'s birth were the child pornography charge and one of his two offenses for driving while intoxicated.

The record contains conflicting testimony with regard to whether Father provided a positive or a negative effect on the family. Mother, a self-described drug addict, claimed that Father introduced her to drugs. Mother suggested that over the course of their twelve-year relationship, Father and his friends contributed to her relapses by giving her drugs each time she had reached a point of sobriety. In contrast to Mother's testimony, Father claimed that he raised J.L.C. by himself

9

for a year and a half while Mother was incarcerated and using drugs. Father's parents offered testimony that to some extent controverted Mother's testimony about Father's lifestyle. His father stated that he knew Father had two convictions for driving while intoxicated, and he was aware that Father was serving a sentence for possession of child pornography, but he never knew Father to drive drunk with J.L.C. in the car, and he never knew Father to be a drug dealer. His mother had never seen Father belligerently drunk around the child and had never seen Father abuse a child. She denied that Father ever had a drinking problem or a drug problem, or that he sold drugs. She stated that her son has "come back to the Lord." Neither witness described the extent of their contact with Father and J.L.C. The trial court could disbelieve them, or could determine they were credible but failed to demonstrate that they had sufficient contact with the family to accurately assess how it functioned. *See A.B.*, 437 S.W.3d at 503.

As the factfinder in this case, the trial court is the sole judge of the credibility of the witnesses and may choose to believe one witness over another. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). The record contains credible evidence that Father engaged in a criminal lifestyle that adversely affected Mother and J.L.C. As an appellate court, we must defer to the factfinder's decisions concerning credibility. *A.B.*, 437 S.W.3d at 503. Viewing the evidence in the light most favorable to the trial court's finding under subsection 161.001(2), we

10

conclude that the trial court reasonably could have formed a firm belief or conviction that termination of the parent-child relationship is in J.L.C.'s best interest. *See J.F.C.*, 96 S.W.3d at 266. Viewing all of the evidence, the disputed evidence is not so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *See id.* In light of the entire record, the trial court reasonably could form a firm belief or conviction that termination is in J.L.C.'s best interest. *See id.* We conclude the evidence is legally and factually sufficient and we overrule issue four.

## Right to Appointed Counsel

In issue five, Father contends, "The [t]rial court erred in not appointing an attorney as required under section 107.013 of the Texas Family Code when termination of parental rights are involved." *See generally* Tex. Fam. Code Ann. § 107.013 (West 2014).[3] Section 107.013 of the Texas Family Code applies only to suits filed by a governmental entity. *Id.* § 107.013(a). An indigent parent does not have a statutory right to appointed counsel in a private termination case. *In re*

---

[3] Father did not request counsel until he filed a motion for appointment of counsel for the appeal. *See Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 31-32 (1981) ("We . . . leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review."). The trial court appointed counsel to represent Father in this appeal. The trial court appointed an attorney ad litem for the child prior to trial. *See* Tex. Fam. Code Ann. § 107.021 (West 2014).

*S.G.E.*, No. 09-11-00191-CV, 2012 WL 1795132, at *1 (Tex. App.—Beaumont May 17, 2012, pet. denied) (mem. op. on reh'g), *cert. denied by A.S.E. v. A.S.*, 134 S. Ct. 689 (2013); *In re I.E.Z.*, No. 09-09-00499-CV, 2010 WL 3261145, at *1 n.1 (Tex. App.—Beaumont Aug. 19, 2010, no pet.) (mem. op.); *In re J.C.*, 250 S.W.3d 486, 487 (Tex. App.—Fort Worth 2008, pet. denied). We overrule issue five.

Conclusion

Having overruled all five of the appellant's issues, and finding no reversible error by the trial court, we affirm the trial court's judgment terminating the appellant's parental rights to J.L.C.

AFFIRMED.

                                                  _____

                                                      CHARLES KREGER
                                                         Justice

Submitted on January 26, 2015
Opinion Delivered February 12, 2015

Before McKeithen, C.J., Kreger and Horton, JJ.