**Opinion issued March 6, 2018**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00725-CV

_____

## IN THE INTEREST OF C.R. AND C.R., CHILDREN

---

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Case No. 2016-05073J**

---

## MEMORANDUM OPINION

D.U., a father, appeals the trial court's decree terminating his parental rights to two of his children, Chris and Cindy.[1] D.U. challenges the trial court's judgment on the grounds that the evidence is factually and legally insufficient to support the

---

[1]    We use pseudonyms for the children.

trial court's conclusions that (1) he committed the predicate acts required for termination, and (2) termination was in his children's best interest. We affirm.

## Background

In April 2015, the Department of Family and Protective Services received an allegation of neglectful supervision after then-one-year-old Chris was nearly hit by a passing SUV while he was playing alone in the road. The driver of the SUV called 911 to report the incident. The Department determined that a cousin was supposed to be watching Chris but had not been paying attention. The cousin retrieved Chris after the SUV driver honked for ten minutes to get his attention.

The Department investigated and discovered that the apartment where the children were living with their mother and D.U. was filthy, with dog feces on a bedroom floor. The children were also dirty.

In July 2015, the mother reported to the Department that D.U. had pushed her while they were arguing. She also reported that D.U. had lost his job, they had been evicted from their apartment, and their car had been repossessed. She told the Department that D.U. took the children to his brother's house and refused to return them. The Department interviewed D.U., who denied being unemployed and accused the children's mother of assaulting him while she was drunk.

At an August 2015 family team meeting, both the mother and D.U. admitted to committing acts of domestic violence. They also admitted to using synthetic

marijuana, and soon thereafter D.U. tested positive for methamphetamines and amphetamines.

In October 2015, the family was referred to Family Based Safety Services, where they were given substance-abuse evaluations, psychosocial assessments, individual counseling, substance-abuse counseling, parenting classes, and random drug tests. The children were placed with their maternal grandmother, who reported to the Department that the parents were not cooperating or providing any financial support for the children. The mother and D.U. thereafter completed substance abuse counseling.

In May 2016, the maternal grandmother informed the Department that the mother told her that she was going to a women's shelter because D.U. had been beating her. The Department met with the mother, who told the caseworker that D.U. had been abusing her, including hitting her in the back of the head so that people could not see the bruising. The mother did not want her children returned to a home where they would witness this abuse.

When the caseworker talked with D.U., he denied the abuse, but he agreed to complete a Batterers' Intervention Class. He later called the caseworker to tell her that he thought the mother should also complete a batterers' class because she had pulled a knife on him while they were drinking. When the caseworker asked the

mother about this incident, the mother said she did not remember anything from that night because she passed out.

In July 2016, the mother told the caseworker that she had moved back in with D.U. and wanted to go to rehab. She also stated that D.U.'s abuse was limited in scope.

But in August 2016, the mother told the caseworker that she had moved out again because D.U. broke her phone. She feared that if she had not left, something worse would have happened. When the caseworker asked D.U. about it, he denied any altercation and told her that the mother moved out while D.U. was away from the apartment.

In September 2016, the Department filed a petition to terminate parental rights. At the time of trial in August 2017, Chris and Cindy were three and two years old.

The record reflects that D.U. has had one other child removed from his care. R.U., his child with another mother, was admitted to Texas Children's Hospital in February 2012 for failure to thrive. R.U. was emaciated and lethargic, but D.U. and the child's mother appeared unconcerned. The child was removed from D.U. and his mother's care and custody, R.U. was placed with a relative caregiver.

Notably, D.U. was also convicted of assault in 2012.

At trial, Davien Guidry, the Department caseworker, testified. With regard to the children's placement, Guidry testified that Chris and Cindy were currently placed with their maternal grandmother, and that the goal was ultimately to place them with their maternal aunt and uncle. The children had bonded with the other children in the maternal grandmother's care, and they would maintain these familial relationships if they were placed with the maternal aunt and uncle.

According to Guidry, the mother acknowledged that she was not capable of caring for the children because of her drug use and other issues. The mother repeatedly tested positive for drugs. She wanted the children to remain in placement with her relatives and not to be placed with D.U.

Guidry testified on numerous topics concerning D.U. For one, Guidry testified that D.U. was the stepfather to a child who had to be removed from the home because of abuse by D.U.

Guidry also testified that Chris has a 30 percent hearing disability due to the abuse and medical neglect by his parents. And she testified that Chris was uncomfortable in visits with his father and that visiting his father has a negative effect on his behavior.

As to drugs and alcohol, Guidry stated the following. In September 2015, D.U. tested positive for methamphetamines and amphetamines. Since the pendency of the case, however, all of D.U.'s drug tests were negative. In his initial psychiatric

5

evaluation, D.U. admitted that he tested positive for methamphetamine and had also used cocaine, marijuana, and Xanax in the past. In June 2017, he had a second psychiatric evaluation in which he stated that he had been sober for a year and a half. The evaluation also recommended that D.U. attend a 12-step program to maintain sobriety. As of the time of trial, D.U. had not attended any such program, but he received notice of this requirement a week before trial, and he offered proof that he had registered for the program. Guidry also testified that D.U. had a job and had rented an apartment.

The Permanency Plan admitted into evidence included the Department's recommendation that both parents' rights be terminated. But at trial Guidry recommended that only the mother's rights be terminated—and not D.U.'s. When asked what had changed her mind since earlier in 2016 (when she had recommended termination of D.U.'s rights), she pointed to the progress she had seen D.U. make. Guidry asserted that D.U. was in constant contact with the agency. She also stated that D.U. had visited the children and bonded with them. She testified that D.U. was at work when Chris's road incident occurred.

On the other hand, however, Guidry acknowledged both that D.U.'s domestic violence was the primary reason she had originally recommended termination and that domestic violence appeared to be an ongoing problem. Guidry acknowledged that she did not think it would be appropriate to return the children to D.U.

Bonita Lockings, the Child Advocates representative, recommended placement of the children with their maternal grandmother or aunt. Lockings stated that Chris had gone from "being afraid" to "blossoming" after being placed in his grandmother's care. Lockings expressed concern about D.U.'s history and pattern of abuse. She noted that the psychological evaluation of D.U. indicated that his anger issues could manifest in stressful situations, and parenting can be stressful. She testified that she was comfortable with termination of both parents' rights. On cross-examination, Lockings noted several other concerns she had about whether D.U. could properly parent, including:

- D.U. lost custody of a child and did not try to visit that child.

- When she interviewed D.U., he told her that he had previously dropped out of a 12-step program, which gave her concerns about his ability to complete the recommended program.

- His support system was small and virtually the same as it had been when his children had to be removed.

D.U. also testified. He admitted that he had abused the mother, but he denied that he was abusive after completing the batterers' class. He accused the mother of lying when she went to the women's shelter but acknowledged that his version of the story—that the mother got drunk, fell down, and decided to go to the shelter—was hard to believe. He admitted: "I don't expect anyone to believe it." As to services, he testified that he had completed all the services of which he was aware and had registered for a 12-step program after learning of the recommendation the

7

prior week. He denied ever previously being in a 12-step program or telling Lockings that he had dropped out.

The Department requested termination of the mother's rights and the children's guardian ad litem requested termination of both parents' rights. The trial court entered an order terminating both parents' rights. D.U. appealed.

**Discussion**

In his first and second issues, D.U. asserts that the evidence was legally and factually insufficient to support the termination of his parental rights under Texas Family Code sections 161.001(b)(1)(D) and (E), respectively. In his third issue, D.U. challenges the trial court's determination that termination of his parental rights was in the children's best interest.

**A. Standard of Review**

To terminate parental rights under section 161.001, DFPS must establish by clear and convincing evidence that: (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the child's best interest. TEX. FAM. CODE § 161.001; *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

In conducting a legal-sufficiency review in a parental-rights-termination case brought by DFPS, we look at the entire record to determine whether the evidence, viewed in the light most favorable to the finding, is such that a reasonable factfinder could have formed a firm belief or conviction about the truth of the matter on which DFPS had the burden of proof. *See J.O.A.*, 283 S.W.3d at 344–45 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* at 344 (quoting *J.F.C.*, 96 S.W.3d at 266).

In conducting a factual-sufficiency review, we review all of the evidence, including disputed or conflicting evidence. *Id.* at 345. The evidence is factually insufficient only if, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" regarding the finding under review. *Id.* (quoting *J.F.C.*, 96 S.W.3d at 267).

Termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). But "[o]nly one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex.

2003). "Thus, if multiple predicate grounds are found by the trial court, we will affirm on any one ground because only one is necessary for termination of parental rights." *In re T.G.R.–M.*, 404 S.W.3d 7, 13 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citations omitted).

## B. Termination under section 161.001(b)(1)(E)

### 1. Applicable Law

Texas Family Code section 161.001(b)(1)(E) provides that the court can order termination upon a finding by clear and convincing evidence that a parent:

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]

TEX. FAM. CODE § 161.001(b)(1)(E). Endangerment means to expose to loss or injury, to jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See J.T.G.*, 121 S.W.3d at 125; *see also* TEX. FAM. CODE § 161.001(b)(1)(E). Termination under subsection (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *J.T.G.*, 121 S.W.3d at 125; *see* TEX. FAM. CODE § 161.001(b)(1)(E). It is not necessary, however, that the

parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533; *J.T.G.*, 121 S.W.3d at 125. The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533; *In re R.W.*, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied). A parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize a child's present or future physical or emotional well-being. *See In re M.R.J.M.*, 280 S.W. 3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

Evidence of domestic abuse of the children's mother may establish an endangering course of conduct. *See Jordan v. Dossey*, 325 S.W.3d 700, 724 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("Evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future."); *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied) (abusive or violent conduct by a parent can produce an environment that endangers the well-being of a child). So too may prior abuse of another child. *See Jordan*, 325 S.W.3d at 724 (evidence as to how a parent has treated another child may establish an endangering course of conduct).

Evidence of criminal conduct, convictions, imprisonment, and their effects on a parent's life and ability to parent, may also establish an endangering course of conduct. *In re S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.).

Routinely subjecting a child to the probability that he will be left alone because his parent is in jail endangers the child's physical and emotional well-being. *Walker v. Tex. Dep't of Human Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Finally, "a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *J.O.A.*, 283 S.W.3d at 345. Illegal drug use may support termination under section 161.001(b)(1)(E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker*, 312 S.W.3d at 617. Because it significantly harms the parenting relationship, drug activity can constitute endangerment even if it happens outside the child's presence. *See J.O.A.*, 283 S.W.3d at 345; *Boyd*, 727 S.W.2d at 533; *Walker*, 312 S.W.3d at 617. Endangerment can also include knowledge that a child's parent abused drugs. *In re U.P.*, 105 S.W.3d 222, 234–35 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (finding evidence legally sufficient to support endangerment when father knew mother was abusing drugs while pregnant, but failed to report her mother to Department or police).

### 2.    Analysis

D.U. asserts that the evidence was legally and factually insufficient to support a finding that he endangered his children's physical or mental well-being under Texas Family Code section 161.001(b)(1)(E). We disagree.

To begin, the record reflects that Chris has a 30 percent hearing disability due to the abuse and neglect of his parents—including D.U.— in not taking him to the doctor and ensuring proper medical care.

Moreover, "endangering conduct is not limited to actions directed towards the child." *J.O.A.*, 283 S.W.3d at 345. This record reflects D.U.'s admitted domestic violence toward the mother. And although the mother and D.U. told conflicting stories about the extent of his abuse, the trial court was entitled to disregard D.U.'s version of events. Even D.U. conceded that his story concerning the shelter was unbelievable.

The record also includes evidence that another child (of mother's) had to be removed from their home because of D.U.'s abuse. And there is evidence that D.U. lost custody of one of his biological children because he was unconcerned when that child was admitted to the hospital for failure to thrive. He has not maintained contact with that child. All of this is additional evidence of endangerment.

D.U. was also previously convicted of assault, which necessarily involves causing or threatening imminent bodily injury or offensive touching. *See* TEX. PENAL CODE § 22.01(a). That too is endangering. *Jordan*, 325 S.W.3d at 724 (abusive or violent conduct can be endangering); *see also J.O.A.*, 283 S.W.3d at 345.

Finally, the Supreme Court has held that, when conducting an analysis under section 161.001(b)(1)(E), "endangering conduct may include the parent's actions

before the child's birth, while the parent had custody of older children, including evidence of drug usage." *J.O.A.*, 283 S.W.3d at 345. Thus, D.U.'s admitted drug use while the children were in his home constitutes additional evidence of endangerment. *See, e.g.*, *R.W.*, 129 S.W.3d at 741 (where father maintained he had not consumed alcohol for at least seven to eight months before termination hearing, factfinder was not required to ignore long history of dependence and destructive behavior where evidence established that past substance abuse was more than just "remote and isolated incidents"). Even D.U. acknowledges that illegal drug use is a relevant factor a reviewing court should consider in conducting a subsection (E) analysis because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker*, 312 S.W.3d at 617. Although D.U. had been sober for almost two years before trial and had enrolled in a 12-step program, it was undisputed that he did not become sober until after the children were removed from his home.

Considering the evidence in the light most favorable to the trial court's finding under section 161.001(1)(b)(E), we conclude that a reasonable trier of fact could have formed a firm belief or conviction that D.U. endangered his children's physical or mental well-being. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of a finding of endangerment under section 161.001(1)(b)(E) or was not so significant that the

factfinder could not reasonably have formed a firm belief or conviction regarding endangerment. Accordingly, we hold that legally and factually sufficient evidence supports the trial court's finding under section 161.001(b)(1)(E).

We overrule D.U.'s second issue. Because sufficient evidence of only one predicate finding is necessary to support termination, we need not address D.U.'s challenge to the trial court's findings under section 161.001(b)(1)(D). *See A.V.,* 113 S.W.3d at 362.

## C. Best Interest of the Children

### 1. Applicable Law

There is a strong presumption that the best interest of a child is served by preserving the parent-child relationship. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). In assessing whether termination is in a child's best interest, courts are guided by the non-exclusive list of factors set forth in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger of the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that

15

the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.*; *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.–Houston [1st Dist.] 2002, pet. denied).

DFPS "need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *C.T.E.*, 95 S.W.3d at 466 (quoting *C.H.*, 89 S.W.3d at 27). But the burden is on DFPS to rebut the presumption that the best interest of the child is served by keeping custody in the natural parents. *Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

### 2. Analysis

D.U. argues that the evidence is insufficient to establish that termination of his parental rights was in the best interests of his children. We disagree.

Under the second, third, and fourth *Holley* factors, we consider the children's physical and emotional needs, the emotional and physical danger of the children, now and in the future, and the ability of D.U. to parent and provide for the children's needs. *Holley*, 544 S.W.2d at 372. Section 263.307 of the Texas Family Code admonishes that "prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE § 263.307. As set forth above, the record supports a finding that D.U. endangered

16

his children's physical or emotional well-being. Moreover, Chris is uncomfortable in visits with his father, and he has behavioral issues after those visits. Conversely, after having been removed, Chris and Cindy—who currently reside with their maternal grandmother and will ultimately be placed with their maternal aunt and uncle—are apparently doing well. They have bonded with their siblings, and Chris has gone from "being afraid" to "blossoming."

Evidence of past misconduct or neglect can be used to measure a parent's future conduct. *In re A.M.*, 385 S.W.3d 74, 82 (Tex. App.—Waco 2012, pet. denied). Thus, the evidence discussed in support of the trial court's finding under section 161.001(b)(1)(E) is probative of a finding as to potential danger in determining the children's best interest. *See Walker*, 312 S.W.3d at 619. In short, the following evidence supports a determination that termination was in the children's best interest: the evidence that Chris has a 30 percent hearing disability as the result of his parents' (including D.U.'s) medical neglect; evidence that D.U. admittedly committed domestic abuse; evidence that another child had to be removed from the home because of D.U.'s abuse; and evidence that D.U. lost custody of his third biological child because he was unconcerned when that child was admitted to the hospital for failure to thrive.

The plans for the child and the stability of the home or proposed placement (factors six and seven) also militate in favor of the trial court's best-interest finding.

As explained above, the record reflects that the children are doing well in their placement and have bonded with their siblings, with whom they will continue to have a relationship when placed with their maternal aunt and uncle. The Department, the children's guardian ad litem, and Child Advocates all agreed that placement with the maternal grandmother or the maternal aunt and uncle would be appropriate for the children. When the children are too young to express their desires, the court may consider the children's bond with and the care provided by the foster family. *See In re T.M.*, No. 01-16-00942-CV, 2017 WL 1885406, at *9 (Tex. App.— Houston [1st Dist.] May 29, 2017, pet. denied) (mem. op.).

Yes, in terms of programs available to assist D.U. (factor five), the evidence shows that D.U. completed all of the services recommended to him except for a 12-step program, which he testified he had learned about the week before trial.[2] And yes, as to evidence of acts that indicate that the existing parent-child relationship between the children and D.U. is not a proper one (factor eight), the record reflects that D.U. stayed in close contact with the Department, he regularly visited his children, and he bonded with them, although Chris is uncomfortable during visits.

But considering all the evidence in the light most favorable to the trial court's best-interest finding, we conclude that a reasonable trier of fact could have formed

---

[2]    Lockings testified that D.U. told her he had previously dropped out of a 12-step program, but D.U. denied this.

18

a firm belief or conviction that termination of D.U.'s parental rights was in the children's best interest. *See J.F.C.*, 96 S.W.3d at 266. Any disputed evidence was not so significant that the trial court could not have reasonably formed a firm belief or conviction that termination was in the children's best interest. *See C.H.*, 89 S.W.3d at 27–28. Accordingly, we hold that legally and factually sufficient evidence supports the trial court's finding that termination of D.U.'s parental rights was in the children's best interest.

We overrule D.U.'s third issue.

## Conclusion

We affirm the trial court's judgment.

Jennifer Caughey
Justice

Panel consists of Justices Bland, Lloyd, and Caughey.