# NO. 12-19-00102-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF J.C., JR.,* | § | *APPEAL FROM THE 411TH* |
| *A CHILD* | § | *JUDICIAL DISTRICT COURT* |
| | § | *TRINITY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

J.C. and M.D. appeal the termination of their parental rights. In three and two issues, respectively, J.C. and M.D. challenge the termination of their parental rights. We reverse and remand.

## BACKGROUND

J.C. is the father and M.D. is the mother of J.C., Jr. On March 6, 2018, the Department of Family and Protective Services (the Department) filed an original petition for protection of J.C., Jr., for conservatorship, and for termination of J.C.'s and M.D.'s parental rights. Both parents filed an original answer within the month through separate attorneys. Although there is no order in the record, one of the Department's status reports to the court noted that it was appointed temporary managing conservator of the child on March 6, 2018.

At the conclusion of the trial on the merits, the trial court found, by clear and convincing evidence, that J.C. engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsection (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between J.C. and J.C., Jr. was in the child's best interest. Based on these findings, the trial court ordered that the parent-child relationship between J.C. and J.C., Jr. be terminated.

Additionally, the trial court found, by clear and convincing evidence, that M.D. engaged in one or more of the acts or omissions necessary to support termination of her parental rights

under subsection (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between M.D. and J.C., Jr. was in the child's best interest. Based on these findings, the trial court ordered that the parent-child relationship between M.D. and J.C., Jr. be terminated. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2018); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2018); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2018); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

2

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

## BEST INTERESTS OF THE CHILD

In J.C.'s and M.D.'s first issue, they argue the evidence is legally and factually insufficient to support a finding that termination of their parental rights is in the child's best interest. In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any

3

excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The family code also provides a list of factors that we will consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2019). These include (1) the child's age and physical and mental vulnerabilities; (2) the magnitude, frequency, and circumstances of the harm to the child; (3) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (4) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (5) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (6) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (7) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (8) whether the child's family demonstrates adequate parenting skills; and (9) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id.* § 263.307(b)(1), (3), (6), (7), (8), (10), (11), (12), (13).

The evidence need not prove all statutory or *Holley* factors in order to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.–Houston [14th Dist.] 2003, no pet.). In other words, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *In re M.R.J.M.*, 280 S.W.3d 494, 507 (Tex. App.—Fort Worth 2009, no pet.). But the presence of scant evidence relevant to each factor will not support such a finding. *Id.* And the fact that a parent is imprisoned does not automatically establish that termination of his parental rights is in the child's best interest. *In re S.R.L.*, 243 S.W.3d 232, 236 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)).

## Analysis

This case began on March 6, 2018, when J.C. and M.D. were arrested for possession of a controlled substance, specifically, methamphetamine. Both parents admitted that they were using

methamphetamine while in their home with J.C., Jr. and the child tested positive for a "very high" level of methamphetamine. The child was removed and placed with his paternal grandfather and step-grandmother. The Department created a service plan for M.D. that she signed on April 26, 2018, and for J.C. that he signed on June 25, 2018. According to Krystal Morrell, a Department caseworker, M.D. completed most of her service plan before October 1, 2018, including parenting classes, a transportation plan and budget, psychosocial and psychological evaluations, an alcohol and drug assessment, inpatient rehabilitation as recommended, outpatient rehabilitation, attending regular visitations, submitting to drug testing, consistently contacting the caseworker, and working for a retail stocking company.

However, M.D. was diagnosed with bipolar II disorder, substance abuse disorder in remission, and possible social anxiety. She never sought medication for her bipolar II disorder which concerned the psychologist who conducted the psychological evaluation. According to the psychologist, M.D. should follow recommended medications and counseling in order to care for a child. However, he noted, M.D. did not report any troubling hypomanic episodes.

Regarding J.C.'s service plan, Morrell stated that before October 1, 2018, he regularly submitted to drug testing, completed parenting classes even though he did not submit a written report establishing what he learned, completed a psychological evaluation which recommended further mental health treatment, successfully completed addiction counseling, and regularly attended visitations. However, the psychologist testified that J.C. did not disclose enough information in his psychological evaluation for a valid diagnosis even though he was tentatively diagnosed with bipolar disorder. Further, J.C. worked for several different contractors.

Both parents, however, violated their service plan. They were both arrested for public intoxication on July 13, 2018, and issued misdemeanor citations, did not have a home that the caseworker could visit, lived briefly with J.C.'s cousin who they admit could not pass a background check, did not complete mental health counseling, and tested positive for marijuana on their last drug test requested by the Department.

On October 1, 2018, J.C. and M.D. moved to Utah. The parents told Morrell that they were not able to find adequate housing, afraid that they would not be able to stay clean while living in Trinity County, and wanted to live near J.C.'s mother and use her as a housing resource. Although the parents wanted to transfer their case to Utah, Morrell testified that she "very thoroughly" explained that the Department could not transfer their case to Utah. Nor, she stated, would they be

able to work services or complete their service plan in Utah because she would not be able to monitor their sobriety. She admitted that both parents were doing "fairly well" until they moved. Morrell stated that since October 1, 2018, she had not been able to monitor J.C. and M.D. and had "no idea" what their sobriety, home, or employment looked like. She stated that she heard from J.C. two or three times since the parents moved to Utah. J.C.'s step-mother stated that in the last four months, the parents used FaceTime to contact J.C., Jr. six or seven times, and the parents sent the child a Christmas gift.

In addition, Morrell stated that J.C. was arrested for a domestic violence incident and was in jail at the time of trial. However, there was no evidence that J.C. had been convicted of domestic violence or any evidence regarding the incident. Morrell believed it was in the child's best interest that J.C.'s and M.D.'s parental rights be terminated because he was very attached to his current caregivers, his current placement is a safe, stable environment, and it was the parents' second case. However, two months before trial, the Department planned to grant permanent managing conservatorship to the paternal grandfather and step-grandmother and grant possessory conservatorship to J.C. and M.D. The parents initially agreed. The Department decided to seek termination of parental rights because the caregivers wanted to adopt J.C., Jr. given J.C.'s most recent arrest and the parents' continued dysfunction.

J.C.'s father testified that J.C., Jr. was doing "awesome" and that he wanted to adopt him. J.C.'s father and step-mother had permanent managing conservatorship of J.C.'s and M.D.'s older child. J.C.'s father stated he did not believe J.C. would "ever" be able to raise a child properly and stated that J.C. had not maintained a stable home or employment for the past year. The investigator for the Department stated that J.C., Jr. was in danger in his home and that it was in the child's best interest for J.C.'s and M.D.'s parental rights to be terminated. However, the investigator was admittedly not present when the child was removed from the home and never spoke to the parents. Nor did she give any reason for her belief that terminating J.C.'s and M.D.'s parental rights was in the child's best interest. The CASA volunteer testified that she was satisfied with J.C., Jr.'s current placement and believed it was in the child's best interest for J.C.'s and M.D.'s parental rights to be terminated. She did not elaborate or explain her reasoning.

Although the parents did not complete their service plan before moving to Utah, more concerning is the lack of explanation or reasoning why the investigator or the CASA volunteer believed it was in the child's best interest for J.C.'s and M.D.'s parental rights to be terminated.

6

The investigator's and CASA volunteer's argument that it was in the child's best interest to terminate J.C.'s and M.D.'s parental rights was conclusory. *See In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.–San Antonio 2013, no pet.) (holding that "conclusory testimony, such as the caseworker's, even if uncontradicted does not amount to more than a scintilla of evidence[, a]nd, '[a]lthough [a parent's] behavior may reasonably suggest that a child would be better off with a new family, the best interest standard does not permit termination merely because a child might be better off living elsewhere.'"). Further, Morrell admitted that as recently as two months before trial, the plan was to grant the caregivers permanent managing conservatorship of the child, similar to the older sibling. However, when the caregivers made known their desire to adopt the child, the Department decided to seek termination. The primary evidence favoring termination is the lack of evidence regarding the parents' recent sobriety, home, and employment, and their failure to continue services after moving to Utah. There is no evidence after the child was removed that the parents harmed the child or that they were inappropriate with the child. Morrell admitted that the parents were doing "fairly well" before moving to Utah. None of these factors are so egregious that it should deprive J.C., Jr. of the benefits he will receive from a continued relationship with his biological family.

Due process commands that courts apply the clear and convincing evidentiary standard in parental rights termination cases. *See Santosky v. Kramer*, 455 U.S. 745, 769, 102 S. Ct. 1388, 1403, 71 L.Ed.2d 599 (1982); *J.F.C.*, 96 S.W.3d at 263; *see also In re B.G.*, 317 S.W.3d 250, 257 (Tex. 2010) (observing that a parental rights termination case implicates "fundamental liberties" and "a parent's interest in maintaining custody of and raising his or her child is paramount" (quoting *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003))). Indeed, "involuntary termination statutes are strictly construed in favor of the parent." *See In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.— Texarkana 2007, pet. denied) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). The Department is required to support its allegations against a parent by clear and convincing evidence; conjecture, a preponderance of the evidence, or lack of recent evidence is not enough. *See In re E.N.C.*, 384 S.W.3d 796, 810 (Tex. 2012); *In re J.M.C.A.*, 31 S.W.3d 692, 696 (Tex. App.— Houston [1st Dist.] 2000, no pet.). Finally, termination "'can never be justified without the most solid and substantial reasons.'" *See Wiley*, 543 S.W.2d at 352 (quoting *State v. Deaton*, 93 Tex. 243, 54 S.W. 901, 903 (1900)). From the evidence above, we conclude the Department failed to

meet its burden to establish by clear and convincing evidence that termination of J.C.'s and M.D.'s parental rights was in the best interest of the child.

Therefore, viewing the above evidence relating to the statutory and ***Holley*** factors in the light most favorable to the trial court's best interest finding, we conclude that a reasonable fact finder could not have formed a firm belief or conviction that termination of J.C.'s and M.D.'s parental rights is in the child's best interest, and therefore, the evidence of best interest under Section 161.001(b)(2) is legally insufficient. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); ***In re J.F.C.***, 96 S.W.3d at 266. We note the presence of scant evidence relevant to each factor to support the trial court's finding. *See **In re M.R.J.M.***, 280 S.W.3d at 507. Because the evidence is legally insufficient to support the trial court's finding that termination of J.C.'s and M.D.'s parental rights is in the best interest of the child, we do not address the factual sufficiency of the evidence. Accordingly, we sustain J.C.'s and M.D.'s first issue.

## CONCLUSION

Having sustained J.C.'s and M.D.'s first issue, we ***reverse*** the trial court's order of termination, and ***remand*** the case for further proceedings consistent with this opinion.[1]

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered August 21, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[1] Because we conclude that the evidence is legally insufficient to support termination of J.C.'s parental rights under Section 161.001(b)(2), we need not address his second issue (denial of due process) or his third issue (ineffective assistance of counsel). Likewise, because we conclude that the evidence is legally insufficient to support termination of M.D.'s parental rights under subsection (b)(2), we need not address her second issue (ineffective assistance of counsel). *See* TEX. R. APP. P. 47.1.

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 21, 2019**

**NO. 12-19-00102-CV**

**IN THE INTEREST OF J.C., JR., A CHILD**

Appeal from the 411th District Court
of Trinity County, Texas (Tr.Ct.No. 22809)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the order of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the order termination be **reversed** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*