

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-19-00164-CV

---

IN THE INTEREST OF S.R., A CHILD

---

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 90,882-E-FM, Honorable Douglas R. Woodburn, Presiding

---

September 26, 2019

## MEMORANDUM OPINION

### Before CAMPBELL and PIRTLE and PARKER, JJ.

The mother of S.R. appeals the trial court's order terminating her parental rights to the child.[1]  She argues the trial court erred in refusing to grant an extension of time pursuant to section 263.401(b) of the Family Code and argues the evidence was insufficient to support the trial court's finding that termination was in the child's best interest.  Finding no error, we affirm the trial court's order.

---

[1] To protect the child's privacy, we will refer to appellant as "the mother," the child by initials, and the child's father as "the father."  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2014); TEX. R. APP. P. 9.8 (a), (b).  The final order the mother challenges on appeal also terminated the parental rights of the father.  The father does not appeal.

## Background

Appellee, the Texas Department of Family and Protective Services, became involved with the family in late October 2017 when it received a report stating police were called to the home of the mother and her boyfriend following a fight while S.R. was present. The mother admitted to police she used methamphetamine and, according to the responding officer, the mother "appeared to be coming down from her high." The mother said her boyfriend uses methamphetamine and drinks excessively. The mother and the boyfriend were arrested for local warrants and booked into the Randall County Detention Center. S.R. was left with a fictive kin aunt. He was later moved to foster care where he remained at the time of the final hearing.

The Department filed pleadings including an Original Petition for Protection of a Child, for Conservatorship, and in the Alternative, for Termination in Suit Affecting the Parent-Child Relationship a week after it removed S.R. from his mother's care. The Department then developed a service plan for the mother. According to that plan, the mother was required to: abstain from the use of illegal drugs; submit to random drug screens; obtain stable housing and employment; participate in and complete parenting classes; participate in a substance abuse assessment with Outreach, Screening, Assessment, and Referral (OSAR) and follow recommendations; complete a psychological evaluation; attend domestic violence classes; attend individual counseling; and attend visits with S.R. A final hearing was held in early November 2018 at which a Department caseworker and the mother testified.

The mother was thirty-three years old at the time of the final hearing. S.R. was three. S.R.'s father was no longer involved with the family and the mother was dating another man.

Both the mother and the caseworker testified the mother used methamphetamine in September 2018 and a "couple of weeks" before the final hearing. The mother told the court she began using methamphetamine when she was twenty-one years old but said, "I wouldn't say I was a complete drug addict." She said she "smoked a little bit," her use was not an "everyday thing," and that she was "not a drug user. I didn't use it everyday (sic)." She did admit to a positive drug screen in January 2018 but said that "doesn't mean I was using at that time." But, when asked at the final hearing, the mother said she had a substance abuse issue "in a way" and asked for help. Following several missed visits, the mother's visits with S.R. were suspended in May 2018, pending the mother's submission of a drug screen. The mother did not appear for that screening and visits with S.R. did not resume.

The mother and the caseworker also testified to the mother's failure to secure employment and stable housing. The mother told the court she was not employed but "might be getting hired by the Burger King . . . ." She also admitted she did not have her own place to live, instead living with her ex-boyfriend's relatives. The caseworker testified the mother had moved around, staying with different people in different places. Both witnesses also testified to the service plan, its requirements, and the requirements completed and not completed by the mother.

The trial court terminated the mother's rights on the grounds of endangering conditions, endangering conduct, and failure to comply with a court order that established actions necessary to retain custody of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O) (West Supp. 2017). The trial court also found that termination was in the best interest of S.R. TEX. FAM. CODE. ANN. § 161.001(b)(2) (West Supp. 2017). After a de novo hearing, the referring court affirmed and adopted the order of the trial court.

Analysis

Applicable Law and Standards of Review

A parent's right to the "companionship, care, custody and management" of her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Accordingly, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (citing *In the Interest of J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993)). The primary focus of a termination suit is protection of the child's best interest. *Id.*

In a case to terminate parental rights by the Department under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying

4

termination, and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002) (citing TEX. FAM. CODE ANN. § 101.007 (West 2014)). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.*, 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d at 362 (citations omitted). We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied on in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95 (citing *In re A.V.,* 113 S.W.3d at 362).

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ.) (citations omitted). The trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also has the right to resolve credibility issues and conflicts within the evidence and may choose to believe all, some, or none of the testimony of any particular witness. *Id.* (citation omitted). Additionally, the appellate court cannot weigh witness credibility issues that depend on demeanor and

appearance as the witnesses are not present. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, as long as those determinations are not themselves unreasonable. *Id.*

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. Giving appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that "does more than raise surmise or suspicion" is not sufficient unless that evidence is "capable of producing a firm belief or conviction that the allegation is true." *In re K.M.L.*, 443 S.W.3d 101, 113 (Tex. 2014) (citation omitted). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266 (citation omitted). We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* (citation omitted). We must also consider whether disputed

6

evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Under an abuse of discretion standard, an appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, rendering its ruling arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985) (citation omitted). Simply because a trial court may decide a matter within its discretion differently than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.* at 242. (citations omitted).

Denial of Continuance under Section 263.401(b)

Through her first issue, the mother argues the trial court erred by finding that extraordinary circumstances did not exist to grant an extension under section 263.401 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.401(b) (West Supp. 2018).

Suits for termination of parental rights under this chapter must be dismissed on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the Department as temporary managing conservator unless the court has commenced trial on the merits or granted an extension under section 263.401(b). TEX. FAM. CODE ANN. § 263.401(a), (b).

7

An appellate court reviews the decision to grant or deny a request for an extension of time under section 263.401(b) for an abuse of discretion. *In re A.J.M.,* 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied) (en banc); *In re D.M.*, 244 S.W.3d 397, 416 (Tex. App. Waco 2007, no pet.) (citations omitted). Under an abuse of discretion standard, an appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling is arbitrary and unreasonable. *In re E.F.,* No. 07-18-00281-CV, 2018 Tex. App. LEXIS 8389, at *2 (Tex. App.—Amarillo Oct. 15, 2018, pet. denied) (mem. op.) (citing *Downer,* 701 S.W.2d at 241-42).

The trial court is permitted to extend the dismissal deadline if the movant shows "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." *Id.* (citing TEX. FAM. CODE. ANN. § 263.401(b)). "The focus is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the temporary custody of the Department, and whether continuing such is in the best interest of the child." *Id.* (citing *In re A.J.M.,* 375 S.W.3d at 604). Actions that are "considered to be the parent's fault will generally not constitute an extraordinary circumstance." *Id.* (citing *In the Interest of O.R.F.,* 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied)).

The mother argues she was entitled to her requested extension because she had satisfactorily shown her circumstances were "extreme." As support for her argument, she notes she had three caseworkers in one year, that she had two attorneys appointed to her during the case, that she had learning disabilities and suffered from depression and

8

bi-polar disorder, that she was confused about her services, that she had communication issues with her previous caseworkers and first attorney, and that she had ongoing transportation issues. On appeal, the mother points to the testimony of the caseworker when she said it was "unfortunate" and "not typical" to have three caseworkers on a case within one year. The mother also contends that after her third caseworker and second attorney were involved, the communication issues resolved and she "was really getting into the swing of working services." However, because this did not occur until ten months into the case, she did not have sufficient time to complete her services.

The record shows the trial court appointed the Department as temporary managing conservator of S.R. on November 6, 2017. According to appellant, the statutory dismissal date in this case was November 12, 2018. In October 2018, counsel filed a written motion for extension of the statutory dismissal date. In that motion, counsel asked to extend the dismissal date to May 10, 2019 because counsel had been appointed the previous month and due to "the communication breakdown" with the previous attorney, counsel would like "to have the opportunity" to assist the mother in "setting up her services required by the Department." The final hearing was held on November 6, 2018. On the day of the final hearing, counsel presented argument to support his motion to extend the dismissal date beyond the one-year statutory date. He told the court he believed that now that the communication issues had been resolved, he thought a six-month extension would allow the mother to complete her services. The Department opposed the extension, telling the court the mother "has had a year to do this. I understand there may have been some change of attorney, change of caseworkers, but it was ultimately [the mother's] responsibility to ensure her services were completed. She knew that this case was going

on. She knew she had a year, and she didn't complete what she needed to in a year." The attorney for S.R.'s father told the court the extension of time would not change anything for her client and S.R.'s guardian ad litem said that because the mother had been present, she should have "been aware of what was needed by now." He also told the court he thought "that we would be better off to move forward to some level of permanency one way or the other today."

The court noted the turnover of caseworkers and pointed out that the appointment of the second attorney was at the mother's request. The court concluded the mother had adequate time to initiate the services and denied the motion to extend the dismissal date.

We cannot find the trial court abused its discretion by denying the mother's request for extension. While the mother's issues regarding communication with previous caseworkers and caseworker turnover might not have been the exclusive fault of the mother, the mother did request appointment of a second attorney. And, many of her issues concerning communication, transportation, and other difficulties could have been seen by the trial court as actions "considered to be the parent's fault." *In the Interest of O.R.F.,* 417 S.W.3d at 42 (also noting "[f]ailure to begin complying with a family service plan until several weeks before trial does not constitute an extraordinary circumstance when the requirements necessary to obtain the return of the child were known well in advance of that time.") (citations omitted). Moreover, the mother's argument in this court seems to focus more on her needs than those of her child. *See In re A.J.M.,* 375 S.W.3d at 604.

We resolve the mother's first issue against her.

Best interest of the Child

In her second issue, the mother challenges the legal and factual sufficiency of the evidence supporting the best interest finding made under section 161.001(b)(2). A determination of best interest requires evaluation of the best interest of the child, not that of the parent. *In re D.S.,* 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.) (citation omitted); *Dupree v. Texas Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (citation omitted).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976)[2] and the factors enumerated in section 263.307 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.307. "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d at 27). Evidence that supports one or more statutory grounds for termination may also

---

[2] These factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.*

constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249; *In re D.S.,* 333 S.W.3d at 384 (citing *In re C.H.*, 89 S.W.3d at 28, *In re P.E.W.*,105 S.W.3d 771, 779 (Tex. App.—Amarillo 2003, no pet.)). The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also keep in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

The mother does not challenge the sufficiency of the evidence supporting the predicate grounds on which the trial court terminated her parental rights. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), and (O).

When determining whether termination of a parent's right is in the best interest of the child, courts are entitled to consider a parent's history of drug use, irresponsible choices, and domestic violence*. In re A.O.,* No. 07-16-00331-CV, 2017 Tex. App. LEXIS 1838, at *12 (Tex. App.—Amarillo March 3, 2017, pet. denied) (mem. op.) (citing *In re J.O.A.,* 283 S.W.3d 336, 346 (Tex. 2009); *In re J.I.T.P.,*99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). The court's unchallenged E-ground finding is supported by substantial evidence of the mother's endangering conduct. Both the caseworker and the mother testified about the mother's history with and use of methamphetamine. The mother admitted to using methamphetamine for many years and to using a few weeks before the final hearing. *In re T.H.,* No. 07-07-00391-CV, 2008 Tex. App. LEXIS 6107, at *21-22 (Tex. App.—Amarillo Aug. 12, 2008, no pet.) (mem. op.)

12

(drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct). *See also In re E.M.,* 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied) (citing *In re F.A.R.,* No. 11-04-00014-CV, 2005 Tex. App. LEXIS 234, at *4 (Tex. App.—Eastland Jan. 13, 2005, no pet.) (mem. op.) ("A parent's continued drug use demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment for the child.")); *In re K.A.S.,* No. 07-12-00234-CV, 2012 Tex. App. LEXIS 8725, at *16-17 (Tex. App.—Amarillo Oct. 18, 2012, no pet.) (mem. op.); *In re A.B.,* 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied) ("Drug use and its effect on a parent's life and ability to parent may establish an endangering course of conduct."). She also admitted to submitting a positive test and not appearing for another. *In re T.H.,* 2008 Tex. App. LEXIS 6107*,* at *21 (failure to appear for drug screening is also an indication the mother was using drugs while her parental rights were in jeopardy).

And, while the mother denied domestic violence with her boyfriend, saying it was only an "argument," the caseworker testified the mother told police domestic violence had occurred. "Domestic violence, want of self[-]control, and propensity for violence may be considered as evidence of endangerment." *In re J.I.T.P.,* at 845. The trial court could have determined that the combination of drug use and domestic violence was conduct that produced an endangering environment and that it was in S.R.'s best interest that the mother's rights be terminated. *See In re E.C.R*., 402 S.W.3d at 249; *In re D.S.,* 333 S.W.3d at 384 (evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest).

The caseworker also told the court the mother did not have the resources to care for S.R., expressed her frustration with S.R., was bi-polar and had been diagnosed with severe depression but was non-compliant with her medicine, had been admitted into an Amarillo psychiatric facility for treatment of mental health issues, and had been placed on suicide watch at the jail. Also, as noted, the mother was unemployed, did not have stable housing, was unable to transport herself to her own appointments and would not be able to take S.R. to his appointments. The caseworker told the court S.R. had "significant delays" and as a result, required appreciably more care than the average child. He required speech and occupational therapy, and a geneticist had recently found a genetic chromosomal abnormality.

In addition, the trial court could have considered the mother's failure to complete requirements of her service plan as part of its determination regarding the mother's rights. *See In re T.H.,* 2008 Tex. App. LEXIS 6107, at *21-22; *In re R.F.,* 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.). The Department developed a service plan for the mother and the trial court ordered her to comply with each of its requirements. The mother agreed this plan was a court order and that the terms of the plan had been explained. However, she said she did not understand it.[3] Nevertheless, the mother never sought additional explanation of that service plan nor did she make it clear to the court or her caseworkers that she did not understand its terms. The service plan required the mother to complete a psychological evaluation, participate in parenting classes, and participate in individual counseling. The mother completed the psychological evaluation but,

---

[3] The trial court might well have discounted the mother's testimony of her lack of understanding of the service plan's terms; her testimony demonstrates an articulate command of the English language.

14

according to the caseworker, did not follow its recommendations. The mother completed the parenting classes. She also completed the initial counseling sessions but did not complete the requested additional six sessions. And, despite her drug history and request that the court refer her to a rehabilitation facility, the mother failed to complete her OSAR assessment as the service plan required. She also failed to acknowledge her drug addiction even in the face of her admissions of use and pleas for help. The mother did not attend the required domestic violence support group, saying a caseworker told her she did not have to do so. And, even though the mother was required to obtain and maintain stable employment and housing, she failed to do so.

While the mother admitted to most of what the caseworker told the court, she asked the court for more time to complete her services. As noted in our discussion of her first issue, to support her request for more time, she told the court she started her services late, had different caseworkers, and switched attorneys. Nevertheless, the court could have taken the evidence of the mother's history, the evidence of S.R.'s needs, and the evidence of the mother's deficiencies and concluded that termination of the mother's parental rights was in the best interest of S.R. *In re A.M.C.,* No. 07-18-00099-CV, 2018 Tex. App. LEXIS 5560, at *12-13 (Tex. App.—Amarillo July 20, 2018, no pet.) (mem. op.). *See also In re E.N.,* No. 07-16-00190-CV, 2016 Tex. App. LEXIS 9131, at *16-17 (Tex. App.—Amarillo August 22, 2016, pet. denied) (mem. op.) (citations omitted) (record showed parent failed to maintain stable employment and failed to comply with the court-ordered service plan, factors the court considered in the best interest analysis and concluded would support the proposition parent would continue her endangering conduct despite her denials at trial).

The trial court also had before it evidence weighing neither in favor nor against its best-interest finding. S.R. is only three years old and thus too young to truly express his desires. When that is so, the finder of fact may consider other factors, including whether the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re A.O.,* 2017 Tex. App. LEXIS 1838, at *12 (citing *In re J.D.,* 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.)). S.R. was doing well in foster placement, but that placement was not an adoptive placement. The Department did not have a prospective adoptive placement at the time of the hearing. The record indicates the foster family was caring for S.R.'s needs, teaching him sign language, and making sure he received educational and medical assistance. But there is little evidence in the record of the bond between S.R. and the foster family. There is also little evidence of S.R.'s bond with his mother. The caseworker did testify that the mother's visits were stopped when she became "irregular" with her contacts and failed to appear for a court-ordered drug screen. However, the record does not contain any testimony regarding the interaction between the mother and S.R. before those visits stopped. Thus, this factor does not weigh in favor of or against termination of the mother's parental rights. *In re A.M.C.,* 2018 Tex. App. LEXIS 5560, at *12 (noting some courts have held that the young age of a child may render this factor neutral).

Considering the record as a whole, we find the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of the mother's parental rights was in the best interest of S.R.

We resolve the mother's second issue against her.

16

Conclusion

Having overruled each of the mother's issues, we affirm the order of the trial court.


James T. Campbell
Justice